ROBERT FAITH, JR., Plaintiff-Appellee, *v.* FRANK MARTOCCIO *et al.*, Defendants—(FRANK MARTOCCIO, Appellant.)

(No. 72-279;

Second District—August 8, 1974.

*Rehearing denied September 19, 1974.*

1000

Henry N. Novoselsky, of Levin & Novoselsky, of Chicago, for appellant.

Thomas P. Sullivan, of Chicago, for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Having entered a contract with defendant (Martoccio), plaintiff subsequently brought an action in equity to recover one half the proceeds from the sale and development of a certain 14-acre, 12-lot parcel of realty (hereinafter, the contested property). The matter was initially heard before a special master who rendered findings of fact and conclusions of law favorable to plaintiff and recommended to the trial court that further hearings be held regarding the state of the account between the parties. The trial court entered a decree based upon the special master's findings and conclusions and held that plaintiff was entitled to an accounting. (For our purposes, we shall refer to the special master's findings as those of the trial court.) Additionally, the decree contained a finding pursuant to Supreme Court Rule 304(a). Ill. Rev. Stat. 1971, ch. 110A, § 304(a).

Defendant appeals claiming that the trial court erred in its construction of the written contract, in finding that there was a partial novation of that contract and by determining that plaintiff had not materially breached the parties' agreement.

In November of 1955, plaintiff, on behalf of defendant, secured an option to buy the contested property. On February 10, 1956, plaintiff and defendant entered into the written contract here at issue. The contract's preamble recited the mutual interest of the parties to procure property for speculation and development; its paragraph (1) described the total land area covered by the agreement. Paragraph (2) set forth certain already acquired properties and stated that these also were for their mutual benefit. Subparagraph 2(A) provided:

"* * * For the sum of $10.00 Dollars and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged the [defendant] gives to the [plaintiff] the right to purchase an undivided ½ interest in the following described property * * * (legal description here omitted included the description of the contested property) for the same period of time and under the same terms and conditions as specified in the above mentioned option.

It is further understood and agreed by and between the parties hereto that upon exercise of the option on the above mentioned [contested property] that [plaintiff] may * * * in lieu of

contributing 50 percent of the monies required under the option agreement * * * assign all rights titles and interest in Lots 18-19-20-21-22 in block 13 in Hugh M. Cornell's Cumberland subdivision in Des Plaines, Illinois to [defendant] as security for a loan in the amount of $15,000 dollars, said $15,000.00 dollars to be paid by the [plaintiff] together with an additional $15,000 dollars to be paid by the [defendant] to exercise said option. The [plaintiff] agrees to repay said sum of $15,000.00 dollars to the [defendant] within two years of assignment."

Subparagraph 2(B) provided that all options were to be obtained in the names of both parties, that titles to all properties purchased were to be held in a land trust and that the parties were to be named beneficiaries to an undivided one-half interest therein. Paragraph (3) provided that the profits and expenses of the venture be equally shared, paragraph (4), that parties should devote equal time to the venture and treat it as a full-time occupation, and paragraph (5), that time was of the essence and that the agreement was to be effective until all properties "shall have been procured, speculated or developed according to the abilities of the parties hereto."

After signing the contract, the plaintiff tendered to the defendant the contracts for the Cumberland lots. Defendant informed plaintiff that he did not at that time have the money to "close the deal" for the contested property and that it would be necessary to get a 30-day extension on the option. Plaintiff then told defendant that he was working on "a deal" with Metalmasters, Inc., who were interested in purchasing two lots of the contested property, and defendant responded that he could borrow money from the bank on the basis of the Metalmaster contract and then make the loan to plaintiff.

On or about March 26, 1956, plaintiff under the name of Faith Realty Company, entered into a contract to convey title to lots 1 and 2 of the contested property to Metalmasters, Inc., for $35,100. He secured an earnest-money deposit of $3500, and that amount was placed in plaintiff/defendant's joint checking account. On March 27, 1956, defendant obtained a bank loan and, with the proceeds of that loan and additional funds of his own, purchased the contested property for $30,000. Title was placed in a trust with defendant as sole beneficiary.

Thereafter, plaintiff and defendant went to the office of defendant's attorney. Plaintiff tendered the Cumberland-lot contracts to the attorney and asked him to draw up the assignment of the contracts as collateral for the $15,000 loan. The attorney asked defendant how he felt about this arrangement, and defendant stated that there was no need to draw

up an assignment because they had the Metalmaster contract. According to plaintiff, the defendant refused to accept the assignment of the Cumberland lots.

On or about May 28, 1956, the Metalmaster transaction was closed; $23,986.54 was placed in the joint checking account, and $7500 was placed in escrow for street and sewer improvements. On June 22, 1956, the $12,000 bank loan was repaid from the joint checking account.

Upon these facts, the trial court found that the evidence established that the parties had agreed to an alternate method by which plaintiff might supply his capital contribution and that the agreement was a novation that abrogated the requirement that plaintiff deposit $15,000 cash as his share of the capital investment. It also found that the novation relieved defendant of lending plaintiff $15,000 on the security of the Cumberland lots.

■■ Defendant contends that error occurred in construing the parties' agreement in that the trial court failed to recognize and treat the provisions of subparagraph 2(A) of the agreement as a separate and distinct specific exception to the provisions of the general contract. The preamble of the agreement, together with paragraphs (1), (3), (4) and (5), are overall general provisions. Paragraph (2) is a specific provision applicable to only a part of the overall venture. Subparagraph 2(A) narrows the specific provisions by setting forth the alternatives by which plaintiff could acquire a 50-percent interest in the contested property. In a contract in which there are general and specific provisions relating to the same subject, the specific provision is controlling. (*Olson v. Rossetter*, 330 Ill.App. 304, 313 (1947), *aff'd*, 399 Ill. 232 (1948).) The trial court recognized this rule by finding that plaintiff had not complied with either alternative contained in subparagraph 2(A). Defendant, however, has overlooked the fact that the trial court also found that compliance with the provisions of subparagraph 2(A) was unnecessary because a novation between the parties had occurred and the novation was enforceable in lieu of the express provisions contained in said subparagraph.

■■ Defendant contends that the finding of a novation deprived him of all his bargained-for rights without a benefit in return. Although the term novation is generally used where there is a substitute debtor or creditor, a novation has additionally been defined as "the substitution of a new debt or obligation for an existing one, which is thereby extinguished." The extent to which the old contract has been extinguished is dependent upon an interpretation of the extent to which the new agreement operates as a discharge. (*Printing Machinery Maintenance, Inc., v. Carton Product Co.*, 15 Ill.App.2d 543, 552 (1957).) The essential elements of a novation are a previous, valid obligation; a subsequent

agreement of all the parties to the new contract; the extinguishment of the old contract; and the validity of the new contract. (*Kiefer v. Reis,* 331 Ill. 38, 43 (1928).) The party seeking to prove the novation has the burden of proof and must establish it by a preponderance of the evidence. (*Canale v. Hulcher,* 85 Ill.App.2d 9 (1967).) A court of review will not disturb the findings of the master unless such findings are clearly contrary to the probative force of the evidence. (*Patek v. Patek,* 263 Ill. App. 487, 498 (1931); *Meyer v. Levy,* 249 Ill.App. 408, 420 (1928).) It is also the law that at any time before breach of a written contract, parties may, by a new contract, written or oral, change the terms of the old contract. (*Hulcher v. Adcock,* 25 Ill.App.2d 255 (1960).) Contracts of novation are no different from other contracts in that to be valid and enforceable they must be based on good and sufficient consideration. 58 Am. Jur. 2d *Novation* § 21 (1971).

In the instant case, the trial court found sufficient consideration for the novated contract in that defendant, "rather than advance his own funds upon the security aforesaid [Cumberland lots], * * * chose to apply funds derived from the sale of certain lots in the subdivision created by the purchase of the [contested property] to Metal Masters [*sic*], Inc., and by the use of these funds capital was provided for the joint venture. By this means, plaintiff was relieved of the necessity of depositing $15,000 in cash and defendant was relieved of the necessity to advance this sum for plaintiff's benefit as his [plaintiff's] share of the capital investment."

In terms of a pecuniary benefit, the defendant shared in a contract with a face value of $35,100. This contract enabled him to obtain sufficient funds with which to exercise the option to purchase the contested property, to share in the gross profit of $5100, and to share in the profits from the sale of the 10 remaining lots in the subdivision.

■■ Defendant's contention that he lost all his bargained-for rights and received no benefit in return is without merit. Subparagraph 2(A) established the intent that plaintiff and defendant would each be responsible for a $15,000 capital contribution; the novation merely altered the method by which the money was to be supplied, not the basic bargain. Rather than lend plaintiff $15,000 in return for an assignment of the Cumberland lots, the defendant chose to apply funds derived from the Metalmasters contract as plaintiff's capital contribution. Thus, save for the substitutive form of consideration for the loan, the bargain remained unchanged. Under this interpretation, we find that the consideration is legally sufficient. An accounting will give each party proper credit toward the capital investment.

On the presumption that the court's finding of novation was erroneous,

defendant raises two other issues which, in light of our holding, need not be answered.

■■ Defendant claims that the court was in error when it found that plaintiff had complied with the general provisions of the contract and argues that plaintiff should be precluded from obtaining relief because of his failure to comply with paragraph (4) of the general contract. That paragraph states:

> "The parties hereto agree to share and share alike and to devote and devote alike their time and services to the procurement, speculation, and development of the properties as herein mentioned. The parties hereto agree to this as a full time occupation."

The court, having found that all 12 lots of the contested property had been sold, determined that plaintiff had negotiated to have the roadway excavation done, that a "speculation" building was constructed through the efforts of plaintiff, that plaintiff acquired necessary building permits and functioned as general contractor; that plaintiff drew the plat for the 14-acre tract and submitted it to a surveyor whom he authorized to survey the property and lay out the subdivision; that he also contacted the village of Bensenville and had it execute the plat of subdivision; that he recorded the plat, arranged for annexation of the property to the village, obtained bids for sewer and water lines, set up a sales office on the property, offered the property for sale and participated in hearings before the Illinois Commerce Commission. Defendant admits that between the February 1956 execution of the agreement until November or December of that year, plaintiff performed under the general contract in a manner intended by the parties but asserts that the contract was abandoned by plaintiff when he subsequently left the State of Illinois. While evidence revealed that plaintiff was absent from the State during either November or December of 1956, April, May and June of 1957, and August of 1957 through March, 1958, the court expressly found that these absences did not constitute an abandonment of the contract by plaintiff and that both plaintiff and defendant were engaged in other activities aside from developing the contested parcel. Written contracts (entered into by plaintiff, defendant and third parties) evidenced that both plaintiff and defendant were engaged in activities aside from the development of the contested property. Although in some instances absence from the State may be evidence of abandonment of a contract, here such interpretation is negated by plaintiff's specific acts in furtherance of their contract. The trial court was of the opinion that plaintiff's activities while in the State constituted compliance with the general provisions of the contract. Without evidence to show that this finding was clearly contrary to the probative force of the evidence, this

court will not reverse the previous finding. Recognized distinctions between the capabilities of individuals have clearly established that one individual may accomplish in a few months that which it might take another a year or more to do. Temporary absence alone is not sufficient basis for finding that the plaintiff failed to perform his part of the agreement or that he had abandoned the contract.

We hold that the trial court was correct in sustaining the master's findings and we, therefore, affirm the judgment.

Judgment affirmed.

SEIDENFELD and RECHENMACHER, JJ., concur.