PHILLIPS AND ARNOLD, INC., Plaintiff-Appellant, *v.* FREDERICK J. BORGSMILLER, INC., *et al.*, Defendants-Appellees.

Fifth District   No. 5—83—0378

Opinion filed April 10, 1984.

Kimmel, Huffman, Prosser & Kimmel, Ltd., of Carbondale, for appellant.

Wolff, Jones, Lawder & Elmore, of Murphysboro, for appellee.

JUSTICE JONES delivered the opinion of the court:

The plaintiff, Phillips and Arnold, Inc., brought an action in the trial court to recover $15,000 on a contract for $30,000 between plaintiff and the defendants, Frederick J. Borgsmiller and Frederick J. Borgsmiller, Inc. The defendant Frederick J. Borgsmiller was a shareholder of the defendant corporation, which was dissolved shortly before suit was brought. Following a bench trial the court entered judgment ordering that the plaintiff take nothing by its suit. The plaintiff has appealed raising two issues, which we quote:

"1. Whether, under the facts as presented, a valid and enforceable [sic] contract was entered into between the Plaintiff and the Defendant, entitling the Plaintiff to recover the full contract price of $30,000.

2. Whether, under the facts as presented, any defense, enforceable at law, was presented by the Defendant which would preclude the Plaintiff from recovering the full contract price for the work done."

Plaintiff alleged in its complaint that on October 8, 1980, the plaintiff, called Phillips Lathing Company, Inc., at that time, had entered into a contract with the defendant corporation for the installation of insulation and 30,000 square feet of acoustical ceilings and that the plaintiff had subsequently performed the contract. The defendants concede that the plaintiff and the defendant corporation entered into a contract on October 8, 1980.

The evidence showed that the work was to be performed on a Grandpa Jone's store to be constructed in Johnston City for the defendant corporation as owner. On or about September 8, 1981, while the building was under construction, the defendant corporation sold the building in question to Grandpa John's, Inc., which undisputedly had possession and control of the building after that time. When the building was sufficiently constructed that the plaintiff could begin its work on it, the plaintiff did so. Plaintiff's secretary and treasurer, Paul Phillips, testified that, according to the plaintiff's records, it had begun work on the building on September 18, 1981. One of the defendants' witnesses, Ron Williams, testified that the plaintiff had begun work on the building "after the middle of September" in 1981; another of the defendants' witnesses, Wayne Taylor, testified that the plaintiff had begun work on the building before September 1, 1981. Plaintiff completed the work in October of 1981.

The contract provided for payment of the entire sum of $30,000 "within 30 days of invoice date." A statement dated October 30, 1981, for the amount of $30,000 was sent to the defendant corporation at P.O. Box 649, Murphysboro, Illinois. Having received no payment, the plaintiff sent a letter dated January 11, 1982, to the defendant corporation at the same address concerning the amount of $30,000 due on the contract and the necessity of the plaintiff's filing a lien on the property if the bill were not paid within the next 15 days. On January 14, 1982, the plaintiff received a check from Grandpa John's, Inc., dated November 17, 1981, in the amount of $15,000. Grandpa John's, Inc., had drawn another check to the plaintiff on the same date in the amount of $15,000, but had never released that check. The plaintiff received no further payment. On April 30, 1982, the defendant corporation was dissolved. Upon dissolution assets of the corporation were distributed to the defendant Borgsmiller, a former director of the corporation. The following July the plaintiff brought suit to recover the remaining $15,000.

The evidence in no way suggests that the work plaintiff performed was unsatisfactory. The defendant Borgsmiller testified that the post office box the defendant corporation had used, that is, the

box to which the plaintiff had sent the statement of October 31, 1981, and the letter of January 11, 1982, was not used by the defendant corporation after September 8, 1981, but was used, instead, after that time by Grandpa John's, Inc. The defendant Borgsmiller had not notified plaintiff of the change of address and was not aware that any employee of the defendant corporation had done so. The defendant Borgsmiller indicated that he had received no correspondence from plaintiff after September 8, 1981, and had become aware that the plaintiff had not been paid when suit was brought against him. The defendant Borgsmiller testified that he had not instructed the plaintiff not to commence work on the project.

Wayne Taylor, a carpenter who had been employed by the defendant corporation from September of 1980 to September of 1981 and by Grandpa John's, Inc., from September of 1981 to May of 1982, testified that he had superintended the construction of the store in question, which had commenced around June of 1981, and that during the construction by plaintiff of the accoustical ceilings, when the witness was employed by Grandpa John's, Inc., he had had a conversation with Paul Phillips in which "Paul asked me if I thought he would have any problems getting his money being it had changed hands." Asked the question, "At that time did he indicate who he was concerned about getting his money from?" The witness answered, "The new man that had taken over." Later, on cross-examination, the witness stated that Paul Phillips had not expressly referred to Grandpa John's, Inc., but that the witness "took it for granted that he was talking about Grandpa Johns [sic]." The witness testified concerning defendant's exhibit No. 1, a copy of a purchase order dated November 9, 1981, and signed by the witness, from Grandpa John's, Inc., to the plaintiff with respect to "contract on putting [sic] in ceiling tile. [sic] at. [sic] G.J.J.C." He testified to having submitted the order, which indicates a "unit cost" of $30,000, to a secretary for Grandpa John's, Inc. He had, he said, no knowledge of what had happened to the original or any copies of the purchase order after having given it to the secretary. The secretary did not testify. He testified further that as an employee of the defendant corporation he had had the authority to accept proposals for construction and to submit them to the defendant Borgsmiller and that as an employee of Grandpa John's, Inc., he had had the same kind of authority for that corporation. He stated that he had obtained the proposal from plaintiff that was accepted by the defendant Borgsmiller and that he had not obtained such a proposal from the plaintiff while he was an employee of Grandpa John's, Inc. In his position, he said, he was aware of any contracts between

Grandpa John's, Inc., and contractors working on new construction and that he was unaware of any contracts whatever between the plaintiff and Grandpa John's, Inc.

In rebuttal Paul Phillips denied having talked with Wayne Taylor at the job site about payment for the work being performed. He testified that, as one of the plaintiff's officers, he was unaware of any agreement between the plaintiff and Grandpa John's, Inc., concerning the work at the store in Johnston City. He stated that he had not seen the purchase order about which Wayne Taylor had testified until the afternoon of trial.

Upon the conclusion of trial the court stated that it was going to reserve ruling for seven days. In response to a question from counsel for plaintiff concerning novation, the court responded:

"Whether he has agreed to it or not [sic] but you can understand from me there is no novation. I don't think that there is any question. I just don't think so. You will hear from me within seven days on this."

In its written judgment the trial court made several findings of fact, including the finding that plaintiff's predecessor, Phillips Lathing Company, Inc., had entered into a contract with the defendants on October 8, 1980, to install insulation and acoustical tile in the Grandpa John's store in Johnston City for $30,000. In paragraph five of its findings the court stated:

"Although there is some evidence that Mr. Phillips had a conversation with Mr. Wayne Taylor indicating that he was aware of the transfer of ownership, there is no evidence as to the date of the conversation. The evidence is clear that no one on behalf of FREDERICK J. BORGSMILLER officially notified Phillips Lathing Company, Inc. that the contract between FREDERICK J. BORGSMILLER, INC. and FREDERICK J. BORGSMILLER and Phillips Lathing Company, Inc. was being cancelled or that FREDERICK J. BORGSMILLER, INC. and FREDERICK J. BORGSMILLER would not be responsible for the amount of the contract. Also, there is no evidence that at any time anyone from Phillips Lathing Company, Inc. notified FREDERICK J. BORGSMILLER, INC. or FREDERICK J. BORGSMILLER that they were looking to Defendants for payment of the contract."

In paragraph nine of the findings, the court stated that "[b]ased upon all of the evidence before the Court, it is the finding of the Court that the work done by Plaintiff in September and October of 1981 was not in performance of the proposal and acceptance of October 8, 1980."

The court was silent on the question of novation.

In their brief the defendants maintain that "the Contract performed by the Plaintiff was performed for another and not for the Defendants and that the Defendants' Contract may still exist. The findings of the Trial Court and its order in this regard are clearly not against the manifest weight of the evidence." In the alternative the defendants contend that they proved the affirmative defense of novation, saying, "[T]he decision of the Trial Court that there was a novation is also fully sustained by the evidence of the record."

We must disagree with the defendants' contention that the work plaintiff performed was pursuant to a contract with another and not the contract of October 8, 1980, between plaintiff and defendants. The proposal together with its acceptance, which is included in the record, shows that the materials specified and the labor were for "Grandpa John's" in Johnston City. The testimony showed that the items specified were installed in the Grandpa John's store under construction there. No one informed the plaintiff not to proceed according to the agreement, and plaintiff did so at the appropriate time in the construction of the building. Wayne Taylor, who, by virtue of his position with Grandpa John's, Inc., would have known of any contract for construction between the plaintiff and that corporation, knew of none, and Paul Phillips testified similarly that there was none. There was no evidence that Grandpa John's, Inc., had sent the purchase order of November 9, 1981, to the plaintiff. The plaintiff sought payment only from the defendant corporation, addressing both the statement and the subsequent letter to the postal box it must have believed the corporation still used, having received from defendant no notice of a change of address. Even if the trier of fact chose to believe the testimony of Wayne Taylor rather than that of Paul Phillips, the evidence showed only that the plaintiff had knowledge of the transfer of ownership at some unknown time during the course of its performance. There is no evidence of when the plaintiff actually learned of the transfer and, hence, no evidence of how long the plaintiff worked on the building in the knowledge that the ownership of it had been transferred. Evidence that the plaintiff, possessed of the knowledge of the transfer, continued to work on the building for an unknown period of time, whether alone or coupled with the other evidence in the case, is inadequate to show that the plaintiff was working at any time pursuant to a contract, either express or implied, with Grandpa John's, Inc.

■ Findings of the trier of fact will not be disturbed on appeal unless they are plainly contrary to the manifest weight of the evi-

dence, that is, unless conclusions opposite to those reached by the trier of fact are plainly evident. (*Emmenegger Construction Co. v. King* (1982), 103 Ill. App. 3d 423, 431 N.E.2d 738.) Our review of the record in the case at bar persuades us that the trial court's finding in paragraph nine of the judgment, namely, that the work done by the plaintiff in September and October of 1981 was not in performance of the proposal and acceptance of October 8, 1980, is plainly contrary to the manifest weight of the evidence.

A novation is the substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one which is thereby extinguished. (*Printing Machinery Maintenance, Inc. v. Carton Products Co.* (1957), 15 Ill. App. 2d 543, 147 N.E.2d 443; *Lechleiter v. Lechleiter* (1947), 330 Ill. App. 517, 71 N.E.2d 845.) Whether a novation has been accomplished depends upon the intention of the parties. (*Lechleiter.*) The essential elements of a novation are a previous, valid obligation; a subsequent agreement of all the parties to the new contract; the extinguishment of the old contract; and the validity of the new contract. (*Faith v. Martoccio* (1974), 21 Ill. App. 3d 999, 316 N.E.2d 164.) To constitute novation by the substitution of debtors, it is essential that the creditor shall have consented to the substitution of a new debt and debtor and shall have agreed to release his original debtor and to accept in his stead the new party. (*Burnett v. West Madison State Bank* (1940), 375 Ill. 402, 31 N.E.2d 776.) The assent of the creditor to the novation may be express or implied from the facts and circumstances attending the transaction or from the subsequent conduct of the creditor. (*Burnett.*) However, that a creditor has knowledge of the assumption of his debtor's obligation by a third person does not necessarily establish such assent. (*Walker v. Wood* (1897), 170 Ill. 463, 48 N.E. 919.) Nor does partial payment of the debt by the third person to the creditor, alone or in combination with the creditor's knowledge of the third person's assumption of the debtor's obligation, necessarily establish such assent on the part of the creditor (*Walker*) or constitute a novation as a matter of law (see *Burnett*). Otherwise stated, the rules concerning a creditor's knowledge of a third person's assumption of the debtor's obligation and a third person's partial payment of the obligation appear in 6 A. Corbin, Contracts sec. 1297, at 214 (1962):

> "When a third party contracts with a debtor or obligor to assume his obligation and perform it in his place, the mere acquiescence in such an assumption by the creditor (obligee) is not an assent to a novation, nor is his mere acceptance of a part

payment made by the third party."

■ Novation is an affirmative defense. (*Burnett.*) The party seeking to prove the novation has the burden of proof and must establish it by a preponderance of the evidence. (*Greenbaum & Browne, Ltd. v. Braun* (1980), 88 Ill. App. 3d 210, 410 N.E.2d 303.) It is for the trier of fact to determine from all the facts and circumstances of the case whether the creditor has impliedly assented to the discharge of the original debtor. (*Walker.*) A court of review will not disturb the findings of the trial court unless such findings are clearly contrary to the probative force of the evidence. (See *Faith v. Martoccio* (1974), 21 Ill. App. 3d 999, 316 N.E.2d 164.) In the absence of clear proof of novation, the third person's assumption of the debt would make the third person merely an additional debtor. (See *Burnett.*) By accepting part payment from the additional promisor, the creditor does not relinquish his claim against the original debtor. *Burnett.*

■ We must likewise disagree with the defendants' contention that they proved their affirmative defense of novation. The evidence is insufficient to show either an intention on the part of the plaintiff to substitute Grandpa John's, Inc., as debtor or an agreement between the plaintiff and Grandpa John's, Inc., that created a new debt extinguishing the old one. What we have said with regard to the defendants' contention that the plaintiff's work was in performance of a contract with Grandpa John's, Inc., applies equally to the assertion of any agreement between the plaintiff and Grandpa John's, Inc., creating a new debt that extinguished the old one. With respect to evidence that might indicate the plaintiff's intent to substitute Grandpa John's, Inc., as debtor, the plaintiff's knowledge of the transfer of ownership at some time during the course of its work on the building is no more persuasive in this context than it was in our prior consideration. Furthermore, the plaintiff's acceptance of partial payment from Grandpa John's, Inc., may be seen as consistent with a view by the plaintiff of that corporation as an additional debtor rather than as a substituted one, given the paucity of other evidence of the plaintiff's intent to substitute it as debtor.

The trial court indicated immediately after trial that it did not think a novation had occurred. The defendants appear to have concluded that the result reached by the trial court in its judgment implied a finding of novation and a changed mind on the part of the trial court. Although the judgment of the trial court does not address the question of novation, its findings are not, however, inconsistent with the view the court had expressed earlier. The oral observation of the court concerning novation was, we think, entirely correct. On the ba-

sis of the record presented for review, the trial court's oral statement was in accord with the evidence, the defendants having failed to establish novation by a preponderance of the evidence even when all of the evidence they offered is considered in the light most favorable to them.

For these reasons we reverse the judgment of the trial court, and, pursuant to our power under Supreme Court Rule 366 (87 Ill. 2d R. 366), we hereby enter judgment for the plaintiff and against the defendants in the amount of $15,000 plus the costs of suit.

Reversed; judgment entered for plaintiff and against defendants in the amount of $15,000 plus the costs of suit.

WELCH, P.J., and KARNS, J., concur.