JOHN ED THOMAS, Plaintiff-Appellee, v. FREDERICK J. BORGS-MILLER, INC., *et al.*, Defendants-Appellants.

Fifth District   No. 5—85—0640

Opinion filed June 1, 1987.

[1]Justice Karns replaces Justice Jones, who retired after the cause was taken under advisement.

Wolff & Jones, of Murphysboro, for appellants.

Mark S. Johnson, of Cairo, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:
Plaintiff, John Ed Thomas, instituted this action against the defendants, Frederick J. Borgsmiller, Inc., and Frederick J. Borgsmiller, for breach of a lease agreement. In defense, the defendants contend that a novation had occurred. The trial court, sitting without a jury, found that no novation had occurred and that defendant Frederick J. Borgsmiller, Inc., was liable to the plaintiff and additionally that Frederick J. Borgsmiller was individually liable for the indebtedness of the corporation. Defendants appeal.

Defendants raise three issues on appeal: (1) whether a novation occurred when defendant Borgsmiller, Inc., assigned to a third party, Grandpa John's, Inc., its interest in its lease with plaintiff; (2) whether the trial court erred in the admission of plaintiff's exhibit No. 7; and (3) whether the defendant Frederick J. Borgsmiller was individually liable for the debt of the corporation, Frederick J. Borgsmiller, Inc.

The relevant facts are as follows: On October 28, 1974, the plaintiff, John Ed Thomas, and the defendant, Frederick J. Borgsmiller, Inc., entered into a 10-year lease on a building located in Energy, Illinois, for the purpose of the defendant's operating a retail outlet store known as Grandpa John's. Pursuant to the lease agreement, lease payments by the defendant were to be made to the Herrin Security Bank. The bank would then credit plaintiff's account, deduct any charges, and forward the balance directly to the plaintiff. Borgsmiller, Inc., operated a Grandpa John's store at the location listed in the lease. On September 18, 1981, the lease was assigned by Borgsmiller, Inc., to a separate corporation, Grandpa John's, Inc., with which Borgsmiller, Inc., had no connection. Grandpa John's, Inc., had purchased the Grandpa John's store from Borgsmiller, Inc. In April of 1982, Frederick J. Borgsmiller, Inc., was voluntarily dissolved.

In May of 1982 Grandpa John's, Inc., defaulted on the lease payment. At the time of the default, there were rents, real estate taxes, and insurance payments for the remaining term of the lease due in the amount of $112,278.50. After its default, Grandpa John's, Inc., declared bankruptcy and the trustee in bankruptcy paid the plaintiff $18,000 for the use of the building for a six month period in 1982. Plaintiff filed a claim for the lease payments due in the bankruptcy of Grandpa John's, Inc.

After the trustee in bankruptcy vacated the premises, the plaintiff leased one-half of the premises, receiving $47,500 in rent payment for the remainder of the lease term. In addition, plaintiff incurred certain obligations in dividing his building into separate portions in order to rent it. These obligations were listed in plaintiff's exhibits Nos. 2 through 6. Also, the plaintiff was provided an estimate from Gentry Plumbing and Heating regarding potential sewer work on the building which was set forth in plaintiff's exhibit No. 7.

Plaintiff brought suit against the defendant corporation and its sole shareholder Frederick J. Borgsmiller, individually, to recover the balance of the lease payments due subsequent to the default by Grandpa John's, Inc. After a bench trial, the court entered judgment against both defendants in the total sum of $73,533.52. It is from these judgments that the defendants appeal.

■ The first issue we address is whether the trial court correctly found there was not a novation regarding the lease executed between plaintiff and defendant, Frederick J. Borgsmiller, Inc. The trial court found that the purported assignment from defendant Frederick J. Borgsmiller, Inc., to Grandpa John's, Inc., was not effective because it was not executed on behalf of the corporation, Frederick J. Borgsmiller, Inc. On appeal defendants do not dispute the trial court's finding but rather urge this court to uphold the validity of the assignment because the plaintiff allegedly accepted certain benefits.

Defendants first seek to establish a novation by showing that plaintiff's bank accepted rental payments from Grandpa John's, Inc. Plaintiff and defendant, Frederick J. Borgsmiller, Inc., agreed that the rental payments under the lease would go directly to plaintiff's bank for deposit into plaintiff's account. The defendants attempt to convert this fact into a broad grant of agency from the plaintiff to his bank. Defendants further argue that since plaintiff's bank accepted the rental payments from Grandpa John's, Inc., the plaintiff himself relied upon the purported assignment. We find defendants' position to be unsupported by the case law. Knowledge of an agent can be imputed to the principal only when it relates to facts within the scope of

the agency. (*Wieboldt v. Best Brewing Co.* (1911), 163 Ill. App. 246, 249.) In the instant case, the scope of the agency was the collection of rental payments, a procedure frequently used by businesses today as a matter of convenience. The scope of the bank's authority to act on behalf of the plaintiff did not extend beyond the collection of rent. Thus, its authority could not extend to accepting an assignment or imputing the plaintiff's reliance on a purported assignment. Furthermore, an agent authorized to collect rent has no authority to change the terms of the underlying lease or to consent to substitution of tenants. (*Wieboldt v. Best Brewing Co.* (1911), 163 Ill. App. 246.) Accordingly, plaintiff could not have relied upon the purported assignment simply because his bank accepted, as a matter of convenience, the rental payments under the lease agreement.

■ ■ Defendants next assert that plaintiff relied upon the purported assignment when he permitted the trustee to occupy the building until the liquidation of Grandpa John's inventory. Our review of the record reveals that the arrangement between the plaintiff and the trustee was separate and apart from the original lease and the purported assignment and that it was done by plaintiff to mitigate his damages with the express understanding that plaintiff would not be jeopardizing any claim he had against Frederick J. Borgsmiller, Inc.

Assuming that there was a valid assignment of the lease to Grandpa John's, Inc., we find that the facts still support the trial court's conclusion that there was no novation. In the instant case, defendants contend that the trial court erred in not finding the existence of a novation. A novation is defined as the substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished or the substitution of a new debt or obligation for an existing one which is thereby extinguished. (*Phillips and Arnold, Inc. v. Frederick J. Borgsmiller, Inc.* (1984), 123 Ill. App. 3d 95, 101, 462 N.E.2d 924, 928.) The essential elements of a novation are: (1) a previous, valid obligation; (2) a subsequent agreement of all the parties to the new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract.

■ In order for a substitution of debtors to constitute a novation, it is essential that the creditor shall have consented to the substitution of a new debt and debtor and shall have agreed to release his original debtor and to accept in his place the new party. Whether a novation has occurred depends upon the intention of the parties, and the assent of a creditor to the novation may be express or implied from the facts and circumstances attending the transaction or from the subsequent conduct of the creditor. However, the fact that a credi-

tor has knowledge of the assumption of his debtor's obligation by a third person does not necessarily establish such assent. Nor does partial payment of the debt by the third person to the creditor, alone or in combination with the creditor's knowledge of the third person's assumption of the debtor's obligation, constitute a novation as a matter of law or necessarily establish such assent on the part of the creditor. (*Phillips and Arnold, Inc. v. Frederick J. Borgsmiller, Inc.* (1984), 123 Ill. App. 3d 95, 101, 462 N.E.2d 924, 928-29.) When a third party contracts with a debtor to assume his obligation and perform it in his stead, the mere acquiescence in such an assumption by the creditor is not an assent to a novation, nor is his mere acceptance of a part payment made by the third party. 6 A. Corbin, Contracts sec. 1297, at 214 (1962).

■ Neither do the actions of the parties in the instant case raise the inference of a novation. The record reveals that the plaintiff was not directly notified of the defendant's, Frederick J. Borgsmiller, Inc.'s, purported assignment to Grandpa John's, Inc. As noted earlier, the fact that plaintiff's bank may have known of the change in the names of the maker on the rental checks does not support defendants' position. The authority of plaintiff's bank was limited to collecting rent and it cannot, on plaintiff's behalf, agree either expressly or implicitly to a novation. Furthermore, there is no evidence of any communication between plaintiff and Grandpa John's, Inc., regarding any assignment. No facts existed from which plaintiff could be advised that an assignment had been attempted and it is uncontroverted that there was no change in the appearance of the demised premises after the purported assignment. In fact, the premises had always been known as Grandpa's and continued to appear to the public as Grandpa's even after the purported assignment. Based on the record before us, we find that the actions of the parties do not support the inference that they intended a novation.

Additionally, the testimony of the two principals as to whether a novation was intended is noteworthy. The testimony of Frederick J. Borgsmiller indicates that he did not know what he intended when he attempted the assignment to Grandpa John's, Inc. Plaintiff's testimony, on the other hand, is unequivocal that he did not intend a novation.

■■ ■ In this regard, novation is an affirmative defense and the party seeking to prove the novation has the burden of proof and must establish it by a preponderance of the evidence. (*Phillips and Arnold, Inc. v. Frederick J. Borgsmiller, Inc.* (1984), 123 Ill. App. 3d 95, 102, 462 N.E.2d 924, 929.) It is for the trier of fact to determine from all

the facts and circumstances of each case whether the creditor has expressly or implicitly assented to the discharge of the original debtor. A reviewing court will not disturb the findings of the trial court unless such findings are clearly contrary to the manifest weight of the evidence. In the absence of clear proof of novation, a third person's assumption of a debt would make the third person merely an additional debtor; and by accepting part payment from the additional promisor, the creditor does not relinquish his claim against the original debtor. *Phillips and Arnold, Inc. v. Frederick J. Borgsmiller, Inc.* (1984), 123 Ill. App. 3d 95, 102, 462 N.E.2d 924, 929.

■ Defendant's second issue on appeal concerns the propriety of the trial court's admission of plaintiff's exhibit No. 7, an estimate for sewer work by Gentry Plumbing and Heating. The evidence indicated that defendant, Frederick J. Borgsmiller, Inc., leased the entire building in Energy, Illinois, which had the store facilities on the south side of the building. After the breach of the lease, plaintiff was able to lease one-half of the premises, the south half, which contained the store facilities. Plaintiff's testimony indicated that he was required to make changes and alterations in the building in order to lease it. One of the alterations was the installation of sewer and water lines to the north one-half of the building to enable plaintiff to lease that portion of the building. Defendants claim that with respect to plaintiff's exhibit No. 7, the plaintiff was not seeking to mitigate his damages but rather was seeking to have the defendant pay for a capital improvement to plaintiff's building. Defendants urge that, as such, plaintiff's exhibit No. 7 should not have been admitted into evidence in that it was not shown to be a reasonable and necessary element of damages sustained by the plaintiff as a result of any act of the defendants.

The trial court found the sewer and water work listed in plaintiff's exhibit No. 7 to be a proper element to be considered as to the question of plaintiff's damage. Defendant never raised the question of whether the sewer work was necessary at the trial level, and accordingly we deem the point to be waived. We do find, however, that plaintiff's exhibit No. 7 should not have been admitted into evidence for the second reason raised by defendant.

■ Plaintiff's exhibit No. 7 is an estimate from Gentry Plumbing and Heating as to work to be performed in the future with respect to sewer and water lines. It is well settled that estimates are inadmissible unless there is a proper foundation laid for their admission. (4 Illinois Evidence sec. 7.39 (Callaghan 1964).) To lay a proper foundation, it is necessary that the witness have a particular knowledge of the nature of the charges made, their necessity and reasonableness, and a

knowledge of the work to be performed in general. The particular facts upon which a witness bases his estimate of the reasonableness of the charges must be shown. In plaintiff's exhibit No. 7, Gentry Plumbing and Heating gave an estimate for plumbing work. Their estimate includes material and labor. No one from Gentry Plumbing and Heating testified regarding this estimate or its reasonableness. Defendant's initial objection to the admission of plaintiff's exhibit No. 7 into evidence was sustained by the trial court. Subsequently, however, the plaintiff's attorney attempted to qualify plaintiff as an expert in the area, so that the plaintiff could give an opinion as to the reasonableness of the charges listed in the estimate. The plaintiff, however, was shown to be a building owner, not a plumber. He did not have any particular training in plumbing skills nor any familiarity with the materials to be used in this particular job. His testimony was that in his experience as a building owner, the charges did not appear to be unreasonable. We do not deem this to be a sufficient foundation to qualify the plaintiff to give an opinion as to the necessity and reasonableness of the estimate drawn by Gentry Plumbing and Heating. No testimony was presented that the plaintiff was familiar with the cost of materials to be used in the job or that he was familiar with the amount or type of work necessary in the laying of sewer and water lines. Plaintiff was not shown to have familiarity with the number of hours necessary to complete the work, the normal charges of plumbers in the area, and whether the materials to be used were, in fact, necessary. We find that a proper foundation for the admission of the estimate was not laid and that plaintiff's exhibit No. 7 was improperly admitted. Accordingly, plaintiff's judgment should not have included the amount reflected in plaintiff's exhibit No. 7.

■■ Defendants' final contention on appeal is that the trial court erred in imposing personal liability upon the defendant, Frederick J. Borgsmiller. The trial court ruled that defendant Frederick J. Borgsmiller was personally liable for the corporate debt. This ruling was based upon the fact that no notice of the corporate dissolution was given to the plaintiff, prior to that dissolution, in violation of section 42—6 of the Illinois Business Corporation Act (Ill. Rev. Stat. 1983, ch. 32, par. 157.42—6), which states:

> "Notice of intent to dissolve. The directors of a corporation which fails to mail to a known creditor of such corporation, as provided in this Act, a notice of the filing by the Secretary of State of a statement of intent of such corporation to dissolve, shall be jointly and severally liable to such creditor for all loss and damage occasioned thereby."

Plaintiff contends that a *prima facie* case for personal liability of a director of a corporation is established by the foregoing section when he proves: (1) that he was a known creditor of the corporation; and (2) that the directors failed to give notice of the corporation's dissolution to him.

In the instant case, plaintiff proved, and the trial court so found, that the plaintiff was a known creditor of the corporate defendant and that he was not given notice of the corporate defendant's dissolution. Therefore, plaintiff contends that he has established defendant's, Frederick J. Borgsmiller's, personal liability for the plaintiff's loss and damage and that the only remaining issue is the extent of plaintiff's loss. Plaintiff further contends that as far as his burden of proof is concerned, the amount of his loss and damage logically must be presumed to be the amount of the dissolved corporation's indebtedness to him. He notes that it is uncontroverted that the corporate defendant was dissolved in 1982 and that the plaintiff never received any payment from the dissolved corporation under the lease which is the subject matter of the instant case. Plaintiff therefore concludes that, if it were in fact the case, it is reasonable for the trial court to infer that the defendant, Frederick J. Borgsmiller, would have introduced evidence showing that no assets of the dissolved corporation were distributed to him or to any other creditor of the corporation.

We do not agree with the plaintiff's position that it was the defendant's burden to show that there were no assets distributed to him (Borgsmiller) or to anyone else at the time of the dissolution and that plaintiff would have sustained no loss when the corporation was dissolved without notice to him. From our consideration of the cases interpreting the statute in question, we find that it was the plaintiff's burden of proving any loss occasioned by his failure to receive notice of the Frederick J. Borgsmiller, Inc., dissolution and that there were corporate assets distributed at the time of that dissolution. The directors of a corporation are liable only for the amount of corporate assets distributed to noncreditors upon dissolution. (*Swager v. Couri* (1979), 77 Ill. 2d 173, 191-92, 395 N.E.2d 921, 928-29; *State Bank v. Segovia* (1977), 49 Ill. App. 3d 682, 364 N.E.2d 688.) In the case at bar, defendant's liability under section 42—6 of the Illinois Business Corporation Act for failure to send plaintiff written notice of the proposed dissolution is limited to any harm caused by such lack of notice; and if any harm was caused, defendant's liability is limited to the value of the assets, if any, improperly distributed upon dissolution. (*Swager v. Corey* (1979), 77 Ill. 2d 173, 192, 395 N.E.2d 921, 928-29.) In the instant case, no inquiry was made into the questions of

whether Frederick J. Borgsmiller, Inc., had any assets at the time of dissolution or whether assets of Frederick J. Borgsmiller, Inc., were distributed to anyone other than creditors. We are unable to conclude, therefore, that the judgment against Frederick J. Borgsmiller, individually, could not be shown to be justified on retrial.

For the foregoing reasons, the judgment of the circuit court of Williamson County is reversed and the instant cause is remanded for a new trial on the issue of the individual liability of defendant Frederick J. Borgsmiller.

Reversed and remanded.

KARNS, P.J., and HARRISON, J.,[1] concur.

---

[1]Justice Harrison replaces Justice Jones, who retired after the case was taken under advisement.