INTERNATIONAL BUSINESS MACHINES CORPORATION *et al.*, Plaintiffs-Appellants, v. MARTIN PROPERTY AND CASUALTY INSURANCE AGENCY, INC., *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—95—1210

Opinion filed June 7, 1996.

Law Offices of Merle L. Royce, of Chicago (Merle L. Royce and Marshall J. Burt, of counsel), for appellants.

Schoenberg, Fisher & Newman, of Chicago (David A. Axelrod and Lori F. Chacos, of counsel), for appellees.

PRESIDING JUSTICE ZWICK delivered the opinion of the court:

This case presents the question of whether Illinois courts may exercise personal jurisdiction over a director and officer of an Illinois corporation who resides outside the State. The trial court ruled that such a person is not subject to jurisdiction in Illinois with regard to his official corporate duties pursuant to the so-called "fiduciary shield doctrine." We now reverse.

Plaintiff International Business Machines, Inc. (IBM), owns One IBM Plaza, a high-rise building located in Chicago. Plaintiff Scribcor, Inc., manages One IBM Plaza on behalf of IBM. Defendant Martin Property & Casualty Insurance Agency, Inc. (the Martin Agency), was formed in 1992 as an Illinois business corporation. Defendant Arnold Skoller (Skoller) was the president and a director of that corporation. The remaining defendants are no longer part of this appeal.

Plaintiffs' complaint alleges that, in March of 1992, Skoller met in Chicago with James Lannon, the general manager of Scribcor, to discuss the Martin Agency's rental of space in One IBM Plaza. On or about April 3, 1992, IBM entered into an agreement to lease suite 2616 to the Martin Agency. The term of the lease began May 1, 1992, and continued through April 30, 1997. The annual rent was agreed to be $18,066.24. Skoller signed the lease as president on behalf of the Martin Agency. The Martin Agency subsequently took possession of the premises. Plaintiffs' complaint alleges that, in January or February of 1993, while the property was still under lease, Skoller and the other individual defendants dissolved the Martin Agency and sur-

reptitiously removed corporate assets from the leased premises, including furnishings and equipment. On May 1, 1993, the Illinois Secretary of State dissolved the Martin Agency because the company failed to file its first annual report. Plaintiffs allege, in part, that Skoller and the other individual defendants wrongfully dissolved the Martin Agency by failing to give them statutory notice of the corporation's dissolution. They also allege that the individual defendants distributed the Martin Agency's assets to themselves, to the detriment of the corporation's creditors.

On March 11, 1993, plaintiffs filed their complaint in the circuit court seeking possession of the premises, past and future rent payments and damages for the individual defendant's alleged violations of the Business Corporation Act of 1983. 805 ILCS 5/8.65(a) (West 1994). The defendants failed to appear in the circuit court to answer the claims brought against them. The trial court entered default judgments on November 9, 1993.

On July 6, 1994, Skoller, together with the other individual defendants, filed a petition to vacate the judgments pursuant to the terms of section 2—1401 (735 ILCS 5/2—1401 (West 1994)), and to dismiss the case. The petition and its supporting documents asserted that the judgments against the individual defendants were void because the court lacked personal jurisdiction over them. In support of their position, the defendants invoked the fiduciary shield doctrine, claiming that their only contact with Illinois was as a result of their affiliation with the Martin Agency and that, as such, they were beyond the fair reach of Illinois courts.

The trial court granted the individual defendants' section 2—1401 motion and dismissed the plaintiffs' claims against the individual defendants. While plaintiffs have not contested the court's ruling with respect to defendants Ernie Skoller and Jack Ebert, plaintiffs seek reversal of the court's decision with regard to defendant Arnold Skoller.

We begin our analysis by noting that Skoller's motion challenging jurisdiction was timely filed. It is a well-settled principle of the common law that a void judgment can be attacked at any time, directly or collaterally. *Vulcan Materials Co. v. Bee Construction*, 96 Ill. 2d 159, 449 N.E.2d 812 (1983); *Lakeview Trust & Savings Bank v. Estrada*, 134 Ill. App. 3d 792, 480 N.E.2d 1312 (1985).

■ ■ From the facts alleged, it is clear that the defendant is a nonresident who may be subjected to the *in personam* jurisdiction of the Illinois courts only through the State's long-arm statute. 735 ILCS 5/2—209 (West 1992). It is the plaintiffs who carry the burden of establishing a *prima facie* basis upon which jurisdiction over the

defendant can be exercised. *R.W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill. 2d 304, 489 N.E.2d 1360 (1986). In considering a challenge to personal jurisdiction, conflicts between a defendant's affidavits and the plaintiff's pleadings and affidavits will be resolved in favor of the plaintiff for purposes of determining whether a *prima facie* case for *in personam* jurisdiction has been made. *Professional Group Travel, Ltd. v. Professional Seminar Consultants, Inc.*, 136 Ill. App. 3d 1084, 483 N.E.2d 1291 (1985); *Kutner v. DeMassa*, 96 Ill. App. 3d 243, 421 N.E.2d 231 (1981). Since the trial court did not hold an evidentiary hearing on the defendant's motion attacking its jurisdiction, our review of the issue is *de novo. Mandalay Associates Ltd. Partnership v. Hoffman*, 141 Ill. App. 3d 891, 491 N.E.2d 39 (1986).

■ We apply a two-step analysis to determine whether the court acquires personal jurisdiction pursuant to the long-arm statute. *R.W. Sawant & Co.*, 111 Ill. 2d at 311. The first step is to determine if jurisdiction is proper under the specific language used by section 2—209. If the answer is no, the inquiry ends; but if jurisdiction is found to be proper under the statute, then we reach the second step and determine whether the exercise of jurisdiction comports with due process of law. *E.A. Cox Co. v. Road Savers International Corp.*, 271 Ill. App. 3d 144, 148, 648 N.E.2d 271 (1995).

■ Subsection 2—209(a) of the long-arm statute lists activities that may trigger personal jurisdiction in Illinois. Plaintiffs rely upon the following relevant statutory language:

"Any person, whether or not a citizen or resident of this State, who in person or through an agent does any acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any such cause of action arising from the doing of any such acts:

\*\*\*

(2) The commission of a tortious act within this State;

\* \* \*

(12) The performance of any duties as a director or officer of a corporation organized under the laws of this State or having its principal place of business within this State." 735 ILCS 5/2—209 (West 1992).

Plaintiffs claim that Skoller's actions in both improperly dissolving the corporation and in converting its assets to his personal use constitute a tortious act sufficient to invoke jurisdiction under subsection 2—209(a)(2). Plaintiffs also argue that Skoller's status as an officer and director of the Martin Agency represents an independent basis of jurisdiction under section 2—209(a)(12).

■ With regard to plaintiffs' first argument, that jurisdiction over Skoller is proper because Skoller committed a tortious act within the State, we note that there has been difficulty with the proper construction of subsection 2—209(a)(2). As Professor Michael has pointed out:

"If it is the actual commission of a tort in the state which causes the jurisdiction of the Illinois courts to attach, a court would not be able to determine its jurisdiction until after a determination is made at trial on the issue of whether the defendant's conduct was tortious or not. Jurisdiction to try the defendant would not be determined until after the defendant had been tried, and if the defendant's conduct was found not to be tortious, the case would not be decided on the merits, but dismissed for lack of jurisdiction, leaving the defendant subject to a later suit on the merits in a different jurisdiction." 3 R. Michael, Illinois Practice § 6.5 (1989).

Our supreme court, in *Nelson v. Miller*, 11 Ill. 2d 378, 143 N.E.2d 673 (1957), recognized this inherent problem and clarified section 2—209(a)(2) by stating that the focus of this section is not on the ultimate question of whether the defendant's acts or omissions were tortious but, rather, on whether the plaintiff has alleged that the defendant "is the author of acts or omissions within the State." *Nelson*, 11 Ill. 2d at 393. As Professor Michael has explained:

"[If] the defendant or its agent performs an act or omission which causes an injury in Illinois and the plaintiff alleges that the act or omission was tortious in nature, the jurisdictional requirement is satisfied. In an attack on the jurisdiction, the defendant can contest whether he or she was responsible for an act or omission causing an injury in Illinois, and whether or not the contacts with the state satisfy the requirements of due process, but not whether the conduct was, in fact, tortious." 3 R. Michael, Illinois Practice § 6.5 (1989).

The question presented under this section is, therefore, whether the plaintiffs have alleged that Skoller committed some act or omission causing injury in Illinois.

■ We conclude the plaintiffs' allegations are sufficient to confer jurisdiction over Skoller under the terms of section 2—209(a)(2). Several federal courts considering the issue have concluded that a "tortious act" as used in the statute must be liberally construed to encompass any act which constitutes a breach of duty to another imposed by law. See *In re Marriage of Highsmith*, 111 Ill. 2d 69, 74, 488 N.E.2d 1000 (1986) (and cases cited therein). Illinois law imposes a duty upon directors to give notice to the corporation's creditors before winding up its affairs, as well as a duty to use residual corporate assets to pay creditors. Our courts correspondingly recognize causes of action by creditors against corporate directors for their

failure to give proper notice of dissolution and for their failure to properly distribute corporate assets. *Swager v. Couri*, 77 Ill. 2d 173, 192, 395 N.E.2d 921 (1979); *Thomas v. Frederick J. Borgsmiller, Inc.*, 155 Ill. App. 3d 1057, 1064-66, 508 N.E.2d 1235 (1987).

In this case, the plaintiffs alleged that Skoller wound up the affairs of the Martin Agency, specifically alleging that Skoller and his fellow directors breached the notice provisions of section 8.65 of the Business Corporation Act of 1983. This section provides, in pertinent part:

> "[T]he directors of [a] corporation who fail to take reasonable steps to cause the notice required by Section 12.75 of this Act to be given to any known creditor of [a dissolving] corporation shall be jointly and severally liable to such creditor for all loss and damage occasioned thereby." 805 ILCS 5/8.65(a)(2) (West 1994).

Plaintiffs have also alleged that Skoller improperly distributed the residual assets of the corporation to himself. Such allegations are sufficient to satisfy the jurisdictional requirements of section 2—209(a)(2).

■ There is a second basis for asserting long-arm jurisdiction over Skoller in this case. Subsection 2—209(a)(12) of the long-arm statute is unambiguous. It provides that directors and officers of Illinois corporations are subject to long-arm jurisdiction simply because they have performed duties as a corporate officer or director. 735 ILCS 5/2—209(a)(12) (West 1994). It is undisputed that Skoller was the president and a director of the Martin Agency, an Illinois corporation, at the time it was dissolved. Consequently, personal jurisdiction over Skoller was proper pursuant to the express provisions of section 2—209(a)(12).

■ Having concluded that the scope of the Illinois long-arm statute is sufficiently broad to cover the type of conduct alleged by plaintiffs in their complaint, we turn to the question of whether the imposition of jurisdiction over Skoller offends either federal or state due process guarantees. Federal due process requires that the defendant have such "minimum contacts" with Illinois that the exercise of jurisdiction over him is consistent with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945). Under state due process analysis, which is not necessarily co-extensive with the federal requirements (*Rollins v. Ellwood*, 141 Ill. 2d 244, 272-75, 565 N.E.2d 1302 (1990)), we look to the meaning of the specific provisions used by the legislature in passing the long-arm statute, as well as to the due process guarantees of the Illinois Constitution. *Rollins*, 141 Ill. 2d at 271-75.

To support his claim that both federal and state due process guarantees are violated by the exercise of *in personam* jurisdiction over him in Illinois, Skoller raises the "fiduciary shield doctrine" and the case of *Rollins v. Ellwood*, 141 Ill. 2d 244, 565 N.E.2d 1302 (1990). In the *Rollins* case, the plaintiff, Sylvester Rollins, was arrested for speeding in Illinois and was mistakenly detained by local police on a Maryland warrant. The warrant was for a man named Ruchell Rollins. For reasons which are not clear, the plaintiff signed an extradition waiver identifying himself as both Sylvester Rollins and Ruchell Rollins. Maryland authorities then sent Sergeant John Ellwood to deliver Rollins to Maryland to face the charges contained in the Maryland warrant. When it became evident that the plaintiff was not Ruchell Rollins, he was released, but not until after he had been taken to Maryland by Ellwood. Plaintiff thereafter brought suit against Sergeant Ellwood in Illinois, claiming that Sergeant Ellwood had committed the intentional torts of kidnapping, unlawful restraint and conspiracy. Ellwood was served in Maryland pursuant to section 2—209(a)(2) of the long-arm statute.

■ Our supreme court, in considering these facts, determined that the assertion of personal jurisdiction over Sergeant Ellwood was improper and adopted the "fiduciary shield doctrine." This doctrine recognizes that it is unfair to force an individual to defend a suit brought against him personally in a forum within which his only relevant contacts are acts performed not for his own benefit, but for the benefit of his employer. The court stated:

> "In practical terms, an employee, especially one in Ellwood's position, has little or no alternative besides unemployment when ordered to enter another State to carry out the wishes of his employer." *Rollins*, 141 Ill. 2d at 279-80.

Because Sergeant Ellwood was not motivated by personal interest, the court found it to be unfair and a violation of due process to exercise personal jurisdiction over him.

■ It is evident that the facts of *Rollins* are quite different from the facts of this case. Unlike Sergeant Ellwood, the defendant in this case was not an employee of his corporation, but one of its directors and officers. This difference is significant, as was more recently discussed in *People ex rel. Morse v. E&B Coal Co.*, 261 Ill. App. 3d 738, 634 N.E.2d 436 (1994).

In *Morse*, a corporate director named Everly, like Skoller in this case, claimed that the fiduciary shield doctrine prevented long-arm jurisdiction over him with regard to actions he committed while serving as a corporate director. The *Morse* court reviewed the supreme court's decision in *Rollins* and then rejected Everly's claim. The court wrote:

"The *Rollins* court found it very significant that [Sergeant] Ellwood's actions were motivated by his employment status rather than personal interests and that he had little or no alternative besides unemployment. In the present case, Everly freely chose to accept a directorship in E&B, with full knowledge that E&B was an Illinois corporation conducting a mining operation in Illinois. We find there to be a meaningful difference between Everly's status as a corporate director of an Illinois corporation and Ellwood's status as a Maryland police officer sent to retrieve Rollins. Based on the analysis used by the *Rollins* court, we do not find the fiduciary shield doctrine applicable in this instance. Under Illinois law, the business and affairs of a corporation are to be managed by its directors. (Ill. Rev. Stat. 1989, ch. 32, par. 8.05 (now 805 ILCS 5/8.05 (West 1992)).) When Everly accepted his position as director of E&B, he knew or should have known such a position involves business transactions in Illinois. Furthermore, his position as director of an Illinois corporation afforded him the full protection of Illinois law in his business interests related to E&B. To avail himself of the benefits of Illinois law and to then claim Illinois courts have no personal jurisdiction over him was not a result the *Rollins* court envisioned in adopting the fiduciary shield doctrine." *Morse*, 261 Ill. App. 3d at 747.

The court then determined that the trial court erred in granting Everly's motion to dismiss on jurisdictional grounds. *Morse*, 261 Ill. App. 3d at 748.

The *Morse* opinion is directly on point. As a director and officer of an Illinois corporation, Skoller tacitly accepted both the duties and the benefits conferred upon him by Illinois law. His position within the Martin Agency and the existence of the Illinois long-arm statute gave fair warning to Skoller that he may one day be haled into court here for his conduct as an officer or director. Indeed, any other conclusion would render meaningless the provisions of section 2—209(a)(12) of the long-arm statute, which provide explicitly for the exercise of jurisdiction over nonresident directors and officers such as Skoller. We conclude it to be both fair and reasonable for Skoller to be required to answer plaintiffs' allegations in Illinois. Accordingly, the exercise of jurisdiction over Skoller offends neither state nor federal due process.

■ Finally, we note that Skoller's counsel has argued that, even if the trial court was properly vested with personal jurisdiction over Skoller when the default judgment was entered, this cause should be remanded to the circuit court for consideration of any substantive section 2—1401 arguments that he may wish to bring. This argument has not been supported with case citation. It is therefore in violation

of Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)). See *Bank of Illinois v. Thweatt*, 258 Ill. App. 3d 349, 630 N.E.2d 121 (1994) (issue waived when failure to argue or cite to authority). Without legal argument as to why a remand is proper in this case, we decline to order one. We note, however, that if Skoller believes he has valid substantive post-judgment defenses, nothing in our decision today precludes him from filing a second post-judgment motion under section 2—1401. See *People ex rel. McGraw v. Mogilles*, 136 Ill. App. 3d 67, 482 N.E.2d 1114 (1985).

For the foregoing reasons, the judgment of the circuit court granting defendant Skoller's section 2—1401(f) motion is reversed and vacated. The default judgment entered against Skoller by the trial court on November 9, 1993, is reinstated.

Reversed and vacated; judgment reinstated.

McNAMARA and RAKOWSKI, JJ., concur.