**Dale S. RICE, Plaintiff,**

v.

**NOVA BIOMEDICAL CORPORATION and Robert Christopher, Defendants.**

**No. 90 C 01584.**

United States District Court, N.D. Illinois, E.D.

Jan. 23, 1991.

Marc William O'Brien, Damon E. Dunn and Jonathan Vegosen, Levin & Funkhouser, Ltd., Chicago, Ill., for plaintiff.

James G. McConnell, Thomas Kottler and Steven Michael Hartmann, Freeborn & Peters, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff, Dale S. Rice, has brought this three-count diversity action against Nova Biomedical Corporation ("NOVA") and Robert Christopher, an employee of NOVA, who is Rice's former supervisor. Rice alleges retaliatory discharge in Count I and defamation in Count II with both NOVA and Christopher as defendants. Count III seeks recovery only from Christopher on the theory that Christopher intentionally interfered with Rice's employment relationship with NOVA. Christopher has moved to dismiss under Fed.R.Civ.P. 12(b)(2), contending that the Court lacks personal jurisdiction over him on each count of the complaint. For the following reasons we deny Christopher's Rule 12(b)(2) motion.

### I. FACTS

Rice is a citizen of the State of Illinois. From January 1981 to August 1989, NOVA employed Rice in Illinois. NOVA is a corporation incorporated under the laws of the State of Massachusetts, having its principal place of business outside the State of Illinois. Christopher is not a citizen of the State of Illinois. Christopher is NOVA's employee and was Rice's supervisor.

On November 4, 1988, Rice suffered a work-related injury. Rice notified NOVA that he intended to file a workers' compensation claim. On November 11, 1988,

Christopher visited Illinois (Declaration par. 7) and gave Rice a "warning notice" for alleged "unsatisfactory job performance." Nonetheless, Rice filed his workers' compensation claim. On August 31, 1989, about one week after Rice suffered a second work-related injury, he received a telephone message on his answering machine that NOVA had terminated his employment without explanation. On September 1, 1989, Rice received a memorandum from Christopher confirming NOVA's termination of Rice's employment.

Rice first alleges that he was discharged in retaliation for his pursuit of rights granted by the Illinois Workers' Compensation Act, and that such a discharge was in violation of that Act and of Illinois public policy. Rice next alleges that the memorandum of termination to him contained statements that his employment was terminated for insubordination and poor judgment. Rice claims that he was defamed when the statements were communicated by Christopher to persons other than Rice and were made with actual malice and with knowledge that they were false, or with reckless disregard of whether they were false or not. Finally, Rice alleges that Christopher intentionally interfered with Rice's employment relationship for Christopher's own goals of retaliation against Rice and that Christopher's actions were contrary to the best interests of NOVA.

## II. DISCUSSION

A federal court sitting in Illinois has personal jurisdiction over a party in a diversity case only if an Illinois court would have such jurisdiction. Fed.R.Civ.P. 4(e);

*FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir.1990). Rice bears the burden of proof in establishing jurisdiction over Christopher. *Mott Corp. v. Montanya*, 141 Ill.App.3d 943, 945, 96 Ill.Dec. 284, 285, 491 N.E.2d 98, 99 (1986). A person is subject to the jurisdiction of the Illinois courts if his conduct falls within one of the fourteen categories enumerated under Illinois long-arm statute and whether assertion of personal jurisdiction comported with the due process requirements of the United States Constitution *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir.1990); *L.B. Foster Co. v. Railroad Service, Inc.*, 734 F.Supp. 818, 820 (N.D.Ill.1990); *see also Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 197, 57 Ill.Dec. 730, 733, 429 N.E.2d 847, 850 (1981), and *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 436, 56 Ill.Dec. 657, 660, 427 N.E.2d 1203, 1206 (1981).[1] Rice asserts that this Court has personal jurisdiction over Christopher because Christopher has committed a tortious act in Illinois within the meaning of Section 2–209(a)(2) of the Illinois long-arm statute.

Since each count of a complaint is ordinarily a separate statement of a claim and the sufficiency of each claim is to be determined by its content alone, *HPI Health Care Services, Inc. v. Mt. Vernon Hosp. Inc.*, 131 Ill.2d 145, 160, 137 Ill.Dec. 19, 25, 545 N.E.2d 672, 678 (1989), we shall consider whether Rice's allegations in each count are sufficient to establish a basis for personal jurisdiction over Christopher as to that count.

---

1. We note that a recent amendment to the Illinois long-arm statute permits a court to exercise jurisdiction on any basis permitted by the Illinois Constitution or the Constitution of the United States. Ill.Rev.Stat., ch. 110, § 2–209(c) (1989). The amendment became effective on September 7, 1989. The Seventh Circuit Court of Appeals has stated that the newly amended Section 2–209(c) is coextensive with due process. *FMC Corp.*, 892 F.2d at 1310 n. 5. Therefore, the two-step inquiry generally necessary for analysis of personal jurisdiction is no longer required. *L.B. Foster Co.*, 734 F.Supp. at 822.

There appears to be a question in the district courts, however, as to whether the new amend-

ment should apply to any case filed after its effective date, or it should apply only to cases in which the conduct giving rise to the cause of action occurred after the effective date of the amendment. *See Bankers Leasing Association v. Tompkins McGuire & Wachenfeld*, 734 F.Supp. 309 (N.D.Ill.1990); *L.B. Foster Co.*, 734 F.Supp. 818. Judge Shadur in *Bankers Leasing Association* makes a persuasive argument that the recent amendment should not apply to conduct arising prior to the effective date of the amendment, even though the case was filed after the effective date. Because we may resolve this motion without relying on the new amendment, we need not address this issue.

## A. Count I

■ In Count I, Rice claims that his supervisor, Christopher, discharged him simply because he filed workers' compensation claims. No other reason for the discharge is alleged. Based on the allegations found in this count, Christopher argues that the "fiduciary shield" doctrine insulates him from personal jurisdiction in Illinois. *See Washburn v. Becker*, 186 Ill.App.3d 629, 632, 134 Ill.Dec. 418, 420, 542 N.E.2d 764, 766, *cert. denied*, 127 Ill.2d 643, 136 Ill. Dec. 610, 545 N.E.2d 134 (1989); *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. 126, 134 (N.D.Ill.1989). Under the fiduciary shield doctrine, if an individual has contact with a State only by virtue of his acts as a fiduciary of a corporation, such acts may not form the basis for the exercise of personal jurisdiction over that individual. *Torco*, 730 F.Supp. at 134. Since the fiduciary shield doctrine cannot be invoked when an individual acts on his own behalf, for a plaintiff to avoid application of the doctrine, he need only allege in good faith that the performed acts advanced personal rather than employer interests. *Id.* at 135. In *Posen v. Marks*, for example, we rejected the fiduciary shield defense based on the reasoning that, from the plaintiffs' allegation that individual defendant acted *"allegedly* on behalf of [the] corporation," it could be inferred that the individual was purporting to act on behalf of a corporation, but in reality acted on his own behalf. *Posen v. Marks*, No. 85 C 51, 1985 WL 671 (N.D.Ill. April 18, 1985).

In this case, however, even construing the allegations in light most favorable to Rice, Rice's bare allegation that Christopher discharged him because he filed workers compensation claims does not establish even an inference that Christopher stood to personally benefit from Rice's termination. Therefore, as to Rice's retaliatory discharge count, the fiduciary shield doctrine would appear to foreclose personal jurisdiction over Christopher.[2]

## B. Count II

In this count, Rice claims that Christopher defamed him because the statements in the memorandum of termination to Rice—that his employment was terminated for insubordination and poor judgment— were false and were maliciously communicated by Christopher to persons other than Rice. Christopher again argues that the fiduciary shield defense bars jurisdiction of this claim.

■ As with Count I, in Count II Rice does not allege that Christopher defamed him for Christopher's personal benefit, but simply claims that Christopher defamed him. The fiduciary shield doctrine prevents the exercise of personal jurisdiction over individual supervisors who, as the agents of their corporation, make defamatory statements to a discharged employee when they terminated him. *LaScola v. U.S. Sprint Communications*, No. 87 C 1567, 1988 WL 19656, 1988 U.S.Dist.LEXIS (N.D.Ill. Feb. 25, 1988). Absent other good faith factual allegations by Rice, *see Torco*, 730 F.Supp. at 135, we find no bases from which to draw a favorable inference that Christopher was not acting on behalf of

2. By the same reasoning, Rice's retaliatory discharge count may also fail to state a claim upon which relief can be granted under Illinois law. Fed.R.Civ.P. 12(b)(6). Illinois courts appear to be split as to whether a discharged employee bringing a retaliatory discharge action could name his individual supervisor as defendant. The Illinois Appellate Court, First District, held that a discharged employee could not bring a retaliatory discharge action against his supervisor because his employer was the proper defendant. *Balla v. Gambro, Inc.*, 203 Ill.App.3d 57, 148 Ill.Dec. 446, 560 N.E.2d 1043 (1st Dist.1990); *Morton v. Hartigan*, 145 Ill.App.3d 417, 99 Ill. Dec. 424, 495 N.E.2d 1159 (1st Dist.1986). Analyzing the question more closely, the Second District held that a discharged employee could bring a retaliatory discharge action against his supervisor if the supervisor commits the act of retaliatory discharge for his personal benefit. *Fellhauer v. City of Geneva*, 190 Ill.App.3d 592, 137 Ill.Dec. 846, 546 N.E.2d 791 (2nd Dist.1989), *app. granted*, 129 Ill.2d 563, 140 Ill.Dec. 670, 550 N.E.2d 555 (1990). Without deciding the issue, we observe that even if Rice may sue his supervisor pursuant to the holding of *Fellhauer v. City of Geneva*, Count I nevertheless makes no claim that Christopher retaliatorily discharged Rice for Christopher's personal benefit. Nor does Rice's factual allegation that Christopher discharged him because he filed workers' compensation claims create any favorable inference that Christopher was acting for his own benefit in terminating Rice.

NOVA when he made the communications alleged to be defamatory. *See Posen*, 85 C 51, 1985 WL 671 (N.D.Ill. April 18, 1985). Therefore, as to Rice's defamation count, the fiduciary shield doctrine also would appear to foreclose the direct exercise of personal jurisdiction over Christopher.[3]

### C. Count III

■ Finally, Rice claims that Christopher intentionally interfered with Rice's employment relationship with NOVA in Illinois because Christopher intentionally and without jurisdiction induced NOVA to terminate its employment relationship with Rice by causing Rice to receive unfounded disciplinary notices and by making it appear that Mr. Rice was a problem employee whose employment should be terminated, when in fact Rice's performance was not deficient and he had simply filed his workers' compensation claims. In this count, Rice makes the specific allegation that Christopher acted to further his own goals of retaliation against Rice, and were contrary to the best interests of NOVA, which, through Christopher's actions, lost the services of a long-standing employee with an excellent service record.

■ On these allegations, the fiduciary shield doctrine provides no defense to personal jurisdiction over nonresident supervisors who, when acting for their personal rather than their corporate employer's interest, interfere with an employee's contractual relations with the corporation by wrongfully terminating him in Illinois. *LaScola*, 1988 WL 19656, 1988 U.S.Dist. LEXIS 1929. In *LaScola*, the court concluded that nonresident supervisors committed a tortious act in Illinois based on the discharged employee's allegations that his supervisors were acting "from personal interests both financial and otherwise which were contrary to the interests of their corporate employer," and thereby interfered with his employment relationship by

wrongfully terminating him in Illinois. *Id.* Similarly, Christopher's alleged actions resulting in a wrongful termination in Illinois constituted "[t]he commission of a tortious act within Illinois" under the Illinois long-arm statute. Ill.Rev.Stat. ch. 110, § 2–209(a)(2).

■ The exercise of personal jurisdiction over Christopher on this count also meets the requirements of due process. The "constitutional touchstone" in the due process analysis is "whether the defendant purposely established minimum contacts in the forum state." *FMC Corp.*, 892 F.2d at 1313 (quoting *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). The notion of "foreseeability" relevant in determining whether minimum contacts exist is not the foreseeability of causing injury in another state but rather the foreseeability that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* In *FMC Corp.*, for example, the court held that the defendant should have foreseen that she could be required to answer for her actions in Illinois because she sent telecommunications to FMC's Chicago office to effectuate her scheme to defraud the company. *Id.* at 1313; *see also Club Assistance Program, Inc. v. Zukerman*, 594 F.Supp. 341, 346–47 (N.D.Ill. 1984) (a defendant's mailing, telephone calls, or causing mailing of messages from another state to a plaintiff in Illinois have been held to satisfy the requirements of due process and the Illinois long-arm statute for the exercise of personal jurisdiction if the defendant intends to affect Illinois interests and intends to communicate his message to Illinois).

Applying these principles, we find that subjecting Christopher to jurisdiction on this claim does not offend due process. According to the complaint, Christopher

---

**3.** We also observe that the complaint fails to allege where any of the allegedly defamatory communications took place. If they all occurred outside Illinois, and if Christopher had no expectation that they would have a potentially devastating impact upon Rice and would thus cause the injury in Illinois, personal jurisdiction would be lacking over Christopher on those bases as well. *See Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984).

first came to Illinois to give Rice a warning notice of unsatisfactory job performance, then telephoned Rice in Illinois leaving a message about termination on Rice's answering machine, and finally sent the memorandum of NOVA's termination of Rice's employment to Rice in Illinois. Christopher sent these communications to Rice to effectuate his alleged scheme to intentionally interfere with the employment relationship of an Illinois resident. Consequently, Christopher should have foreseen that he could be required to answer in Illinois for his personal actions of interfering with Rice's employment relationship.

### D. Pendent Personal Jurisdiction

■ Since we have found that personal jurisdiction exists as to Count III, and accordingly, that Christopher must defend that count in this forum, we feel compelled to consider whether it makes sense to dismiss the first two counts on the ground that personal jurisdiction is lacking.[4] Under the doctrine of pendent personal jurisdiction, a court may exercise its discretion to hear claims as to which personal jurisdiction may otherwise be lacking if those claims arise out of a common nucleus of facts with claims as to which personal jurisdiction exists. Cf. VMS/PCA Limited Partnership v. PCA Partners Limited Partnership, 727 F.Supp. 1167 (N.D.Ill. 1989) (applying doctrine of pendent venue in similar circumstance). Pendent personal jurisdiction typically is invoked in cases where the exclusive basis for personal jurisdiction is the presence of a federal claim that provides for extra-territorial service of process. See, e.g., Oetiker v. Werke, 556 F.2d 1 (D.C.Cir.1977); Robinson v. Penn Central Co., 484 F.2d 553, 554–56 (3d Cir. 1973); Riordan v. Smith Barney, 1987 WL 12179, at 3–4, 1987 U.S.Dist. LEXIS 4827, at 8–9 (N.D.Ill.1987). The court in Robinson explained why personal jurisdiction over related claims would be appropriate:

> Once the defendant is before the court, it matters little, from the point of view of procedural due process, that he has be-

come subject to the court's ultimate judgment as a result of territorial or extra-territorial process. Looked at from this standpoint, the issue is not one of territorial in personam jurisdiction—that has already been answered by the statute—but of subject matter jurisdiction. It is merely an aspect of the basic pendent jurisdiction problem.

484 F.2d at 555.

Such reasoning applies with equal, or perhaps even greater, force in this case. Since the first two counts are substantially interrelated to Count III and Christopher is already properly before us on Count III, from the standpoint of fundamental fairness as to contacts with and convenience of the forum, Christopher loses nothing by being subject to our judgment on the other two counts. And since subject matter jurisdiction over each of the counts is based on diversity, we do not face the additional and more abstract problem, nevertheless overcome in cases such as Robinson, as to the propriety of exercising pendent subject matter jurisdiction, particularly over claims as to which personal jurisdiction is also lacking. Accordingly, we do not believe the circumstances of this case warrant the dismissal of Counts I and II for lack of personal jurisdiction.

### III. CONCLUSION

For the reasons set forth above, Defendant Christopher's Rule 12(b)(2) motion is denied as to Count III. We make no finding as to whether the complaint properly states a claim against Christopher. The denial of the motion, however, will be without prejudice to Christopher's right to raise it again under Rule 56, should discovery prove that his contacts with this forum with respect to Count III were much less significant than suggested by Rice's complaint. It is so ordered.

■

---

**4.** Because neither side apparently considered the ramifications of dismissing one or two but not all of the counts on personal jurisdiction grounds, we undertake analysis of this issue without assistance from the parties' motion papers.