THE PEOPLE *ex rel.* RONALD MORSE, Director of Mines and Minerals, Plaintiff-Appellant, v. E AND B COAL COMPANY, INC., *et al.*, Defendants-Appellees.

Fifth District    No. 5—91—0810

Opinion filed May 17, 1994.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of counsel), for appellant.

James K. Powless, of Marion, for appellee Margaret Chamness.

Pamela Lacey, of Hart & Hart, of Benton, for appellee Edward Everly.

JUSTICE GOLDENHERSH delivered the opinion of the court:
Plaintiff, People of the State of Illinois *ex rel.* Ronald Morse, Director of Mines and Minerals, filed this action to collect fines in the amount of $355,445 for violations of the Surface Coal Mining Land Conservation and Reclamation Act (the Act) (Ill. Rev. Stat. 1989, ch. 96¹/₂, par. 7901.01 *et seq.* (now 225 ILCS 720/1.01 *et seq.* (West 1992))). Plaintiff appeals from a summary judgment of the circuit court of Williamson County in favor of defendant, Margaret Chamness, and an order dismissing the action against defendant, Edward Everly, for lack of personal jurisdiction. A default judgment was entered against defendant, E&B Coal Company, Inc., for the total civil penalties. In this appeal, plaintiff contends that (1) the trial court erred in granting summary judgment in favor of Margaret Chamness and misapplied the civil penalty provision of the Act; (2) the trial court erred in finding that it had no personal jurisdiction over Edward Everly; and (3) the trial court erred in allowing Edward Everly to use the fifth amendment (U.S. Const., amend. V) as a shield to avoid producing documents pursuant to plaintiff's discovery request. We affirm in part, reverse in part, vacate in part, and remand.

I

The facts of this case are largely undisputed. In 1978, Bert Chamness incorporated E&B Coal Company, Inc. (E&B). Chamness and his wife, Margaret Chamness, jointly owned all of E&B's stock. Shortly thereafter, E&B obtained permits from the Department of Mines and

Minerals (the Department) to mine coal at three different sites. Pursuant to mining permit regulations, E&B obtained reclamation bonds totaling $920,555, which were later forfeited to the State. Bert Chamness died in 1981, at which time Margaret Chamness succeeded him as president of E&B. Their son-in-law, Edward Everly, was named as a director at that time and served in that capacity until July 1984. E&B operated strip mines known as Crenshaw mine, Spillertown mine, and Corinth mine. From 1981 to 1983, E&B completed existing and renewed coal contracts and short-term orders. The coal contracts began to expire in late 1983, at which time E&B received only periodic short-term orders. At the Crenshaw mine, the landowner obtained an injunction prohibiting E&B access to the site from late 1981 or early 1982, and E&B was unable to further mine that site. In 1984, the Internal Revenue Service levied on all E&B bank accounts, eliminating operating capital. Shortly thereafter, creditors foreclosed on and repossessed all of E&B's real property and equipment. From 1981 to 1985, E&B had insufficient cash to maintain equipment payments and payroll, and periodic compliance with reclamation notices was accomplished where manpower and equipment were available. Additionally, a State inspector or agent allegedly advised Margaret Chamness not to worry about reclamation because E&B had paid for bonds and the bonding company would be responsible for the reclamation.

On December 15, 1986, plaintiff filed a complaint against E&B, Margaret Chamness, Edward Everly, and Barbara Everly, seeking civil penalties pursuant to section 8.04 of the Act. (Ill. Rev. Stat. 1985, ch. 96$^1$/$_2$, par. 7908.04 (now 225 ILCS 720/8.04 (West 1992)).) The complaint alleged that E&B had violated provisions of the Act for which it received numerous notices of violation and cessation orders. The complaint also alleged that the individual defendants, as directors and/or officers of E&B, were personally liable for the civil penalties assessed against E&B since they had each "willfully and knowingly authorized, ordered and carried out the violations described in the aforementioned notices of violation and also willfully and knowingly authorized, ordered and carried out the failures and refusals to comply with the aforementioned cessation orders." E&B and Margaret Chamness were served with process. Margaret Chamness filed a motion to dismiss on the grounds that the complaint failed to state a cause of action because, *inter alia*: (1) on the notices of violation, the Department had expressly related the underlying violations to be the result of negligence and not knowing and wilful conduct; and (2) the complaint failed to allege notice of the notices of violation and cessation orders to any party other than E&B. On May

6, 1987, the trial court granted Margaret Chamness' motion to dismiss, and plaintiff was ordered to replead within 21 days. On May 12, 1987, the complaint was confessed against E&B, and judgment by default was entered for the total civil penalties of $355,445.

Subsequent to the judgment against E&B and over the course of the litigation, the remaining counts of the complaint were amended and/or exhibits added as to Margaret Chamness and as to Edward Everly. On May 25, 1990, plaintiff's final amended complaint against the individual defendants was filed. According to the amended complaint, the Department issued to E&B 20 notices of violation and proposed penalties ranging from $300 to $1,530 for violations of the Act. Attached to the complaint were the notices of violation, which stated the nature of the violation, the area of operation affected, the remedial action to be taken, the time frame for abatement of the violation, and the calculation of the penalty. Examples of these violations were: (1) failing to monitor surface water for the months of July through September 1983 at the Corinth and Crenshaw mines; (2) failing to regrade land within 11 months of active mining; (3) discharging toxic water which did not meet applicable environmental standards which affected the holding pond at E&B's #2 mine; and (4) conducting mining operations outside the permit area.

The complaint further alleged that 15 cessation orders were subsequently issued to E&B for failing to take the corrective action required by the notices of violation to abate the violation, such as failing to treat or cover and revegetate exposed toxic areas, or failing to begin grading of affected area within the time limit. Each cessation order carried a penalty of $22,500. The sum was calculated as a minimum $750 penalty for each day (up to 30 days) during which there was a failure to take the corrective action indicated by the notice of violation.

The notices of violation and the cessation orders were sent by certified mail, addressed to Margaret Chamness and E&B. Margaret Chamness acknowledged service by signing 35 return receipts. As to the individual defendants' status with E&B, the complaint alleged that Margaret Chamness was president, registered agent, and director; that Barbara Everly was secretary-treasurer and director; and *inter alia*, that Edward Everly was shareholder, director, and officer of E&B prior to its involuntary dissolution. The complaint alleged that each continued to act as an agent of E&B thereafter. In response to pleading challenges by Edward Everly, the complaint further alleged:

> "In his various capacities with defendant E&B Coal Co., Inc., defendant Edward Everly attended meetings in Carterville, Illinois

of the board of directors of defendant E&B Coal Co., Inc. on September 10, 1981 and December 15, 1982; wrote letters to plaintiff on March 31, 1983, July 29, 1983 and March 9, 1984; personally received in Williamson County, Illinois an earlier notice of violation and cessation order from plaintiff on March 30, 1983; accompanied plaintiff's representative on March 31, 1983 on an inspection of one of defendant E&B Coal Co., Inc.'s mines in Williamson County, Illinois; met at plaintiff's office in Marion, Illinois on July 28, 1983 with plaintiff's inspector; and made a complaint by telephone to plaintiff on January 3, 1984 on behalf of defendant E&B Coal Co., Inc. In addition, as its attorney, defendant Edward Everly represented defendant E&B Coal Co., Inc. on June 8, 1984 in an administrative hearing in Springfield, Illinois regarding the earlier cessation order. After April 1, 1985 defendant Edward Everly continued to act as an agent of the dissolved defendant E&B Coal Co., Inc. and carried on its business."

The respective counts further alleged, as to each of E&B's agents:

"[The defendant] willfully and knowingly authorized, ordered and carried out the failures and refusals to pay the penalties assessed as [a] result of the aforementioned Notices of Violation and also willfully and knowingly authorized, ordered and carried out the failures and refusals to comply with the aforementioned Cessation Orders and to pay the penalties assessed as [a] result thereof."

Pursuant to the Act, judgment on the civil penalties against the individual defendants was requested. In addition to counts II and IV seeking civil penalties, count V further alleged that defendants are required by section 8.06 of the Act (Ill. Rev. Stat. 1989, ch. 96$^{1}$/$_{2}$, par. 7908.06 (now 225 ILCS 720/8.06 (West 1992))) to reclaim the subject mined land pursuant to the notices of violation and cessation orders previously issued; that their failure to reclaim the land has caused irreparable damage to the People; and that based on the Act's provision for injunctive and other relief, a mandatory injunction commanding reclamation by defendants should be entered.

## II

Edward Everly was served in California on January 4, 1988, and he filed a special and limited appearance, along with a motion to quash service and to dismiss count IV for lack of personal jurisdiction. In an accompanying affidavit, Edward Everly swore that he was a director of E&B from September 1981 until his resignation in 1984; he received no compensation from E&B; he had never been a shareholder; he had no knowledge of the notices of violation of cessation orders prior to service in the instant action; and he was a California resident with few travels to Illinois. On August 8, 1988,

the trial court denied Edward Everly's motion to quash, reasoning that defendant was subject to Illinois' long-arm jurisdiction and not protected by the fiduciary shield doctrine if, as alleged, he was a director of the corporation mining coal in Illinois. Over the course of the next two years, plaintiff and Edward Everly engaged in a series of pretrial motions and discovery. In December 1989, plaintiff sought the production of personal and corporate records from Edward Everly. Everly invoked his fifth amendment right against self-incrimination, which the trial court acknowledged by order of January 31, 1990. Plaintiff sought reconsideration of this order on August 16, 1990, arguing that the fifth amendment could not be utilized by Edward Everly as to corporate records. The court denied reconsideration on April 1, 1991. Meanwhile, Barbara Everly was served with summons in California on July 18, 1990, and filed a special and limited appearance and motion to quash service on July 27, 1990. Prior to judicial ruling and on January 23, 1991, Barbara Everly supplemented her motion to quash, and Edward Everly sought reconsideration of personal jurisdiction, citing the Illinois Supreme Court's 1990 decision in *Rollins v. Ellwood* (1990), 141 Ill. 2d 244, 565 N.E.2d 1302, concerning the fiduciary shield doctrine.

Plaintiff moved to voluntarily dismiss Barbara Everly on June 24, 1991. The court ruled that the motion was moot when it entered an order on August 13, 1991, stating that it lacked personal jurisdiction over both Barbara Everly and Edward Everly pursuant to the *Rollins* decision. The court stated:

> "The Court finds that, as a matter of law, the fiduciary shield doctrine, which has been expressly recognized to be valid by the Supreme Court of Illinois, prevents the courts of this State from acquiring jurisdiction over these nonresident defendants under the circumstances alleged in Plaintiff's amended complaint."

On August 13, 1991, the court vacated its August 8, 1987, order as to Edward Everly and quashed service on both Everlys. With the Everlys dismissed from the action, plaintiff proceeded against Margaret Chamness. Both parties filed motions for summary judgment and agreed there were no genuine issues of material fact. On October 8, 1991, the circuit court entered summary judgment in favor of Margaret Chamness.

### III

We first turn to the issue of whether the trial court correctly held that Margaret Chamness is not personally liable for civil penalties under the Act. Section 8.04(a) of the Act provides for penalties against permit-holding entities:

"§ 8.04. Civil and Criminal Penalties. (a) Any permittee who violates any permit condition or who violates any provision of this Act or rules adopted under this Act, may be assessed a civil penalty by the Department for the purpose of aiding in the administration of this Act. If a cessation order is issued under Section 8.06 with respect to a violation, a civil penalty shall be assessed. Such penalty shall not exceed $5,000 for each violation. Each day of continuing violation may be deemed a separate violation for purposes of penalty assessments. In determining the amount of the penalty, consideration shall be given to the permittee's history of previous violations at the particular mining operation; the seriousness of the violation, including any irreparable harm to the environment and any hazard to the health or safety of the public; whether the permittee was negligent; and the demonstrated good faith of the permittee charged in attempting to achieve rapid compliance after notification of the violation." (Ill. Rev. Stat. 1985, ch. 96$^1$/$_2$, par. 7908.04(a) (now 225 ILCS 720/ 8.04(a) (West 1992)).)

In this case, plaintiff issued cessation orders under section 8.06 of the Act, and E&B was found to be liable for civil penalties pursuant to the statute. Section 8.04(f) provides for penalties to directors, officers, and agents of permit-holding entities:

"(f) Whenever a corporate permittee violates a condition of a permit or fails or refuses to comply with any order issued under Section 8.06, or any order incorporated in a final decision issued by the Department under this Act ***, any director, officer, or agent of such corporation who willfully and knowingly authorized, ordered, or carried out such violation, failure, or refusal shall be subject to the same civil penalties, fines, and imprisonment that may be imposed on a person under subsections (a) and (e) of this Section." (Ill. Rev. Stat. 1985, ch. 96$^1$/$_2$, par. 7908.04(f) (now 225 ILCS 720/8.04(f) (West 1992)).)

The trial court stated two grounds for granting Margaret Chamness' motion for summary judgment: (1) the statutory language, "willfully and knowingly authorized, ordered, or carried out," with regard to the corporation's failure to comply, required some deliberate action by Margaret Chamness which did not appear of record; and (2) the corporate agent's liability under section 8.04(f) could not be premised on the corporation's failure to pay a penalty ordered under section 8.04(b). Plaintiff argues the court's conclusion that some "deliberate action" by Margaret Chamness was necessary for her to incur liability was an inaccurate application of the law.

To analyze this question, we must first look at the definition of "willfully and knowingly." According to title 62 of the Illinois

Administrative Code, which guides the Department in assessing individual penalties under section 8.04(f) of the Act, "knowingly" and "willfully" are defined as follows:

"a) Knowingly means that an individual knew or had reason to know in authorizing, ordering or carrying out an act or omission on the part of a corporate permittee that such act or omission constituted a violation, failure or refusal.

***

c) Willfully means that an individual acted—

1) Either intentionally, voluntarily or consciously, and

(2) With intentional disregard or plain indifference to legal requirements in authorizing, ordering or carrying out a corporate permittee's action or omission that constituted a violation, failure or refusal." 62 Ill. Adm. Code §§ 1846.5(a), (c) (1991).

■ In applying these definitions to the case at bar, the trial court concluded that, in order for Margaret Chamness' actions to be considered wilful and knowing, a deliberate action was required. Plaintiff argues that the trial court erred in its interpretation, because an individual civil penalty is also sustainable in cases of deliberate "inaction." We find that this argument is, in essence, a question of semantics and that the result reached by the trial court was not in error. The phrase "deliberate action" was not clearly defined by the trial court, and we do not wish to promulgate it as the standard interpretation of section 1846.5. We do, however, find that the trial court was correct in concluding that Margaret Chamness did not wilfully and knowingly authorize, order, or carry out E&B's failure to comply with cessation orders ordered by the Department. The undisputed facts show that Margaret Chamness was without working capital to meet her payroll, that her equipment was repossessed, that she was without funds or equipment necessary to correct or abate the violations cited by the Department, and that she believed the reclamation would be covered by forfeiture of the reclamation bonds purchased by E&B at the time of its incorporation. We find no evidence to indicate that Margaret Chamness acted intentionally, voluntarily, or consciously and with intentional disregard or plain indifference to legal requirements by authorizing, ordering, or carrying out E&B's violations of the Act. Considering these factors, we conclude that the trial court's order granting Margaret Chamness' motion for summary judgment was proper. Because we have reached this result, we need not address whether the trial court's second stated reason for granting the summary judgment was correct.

## IV

Plaintiff's next contention on appeal is that the circuit court erred in finding that it had no personal jurisdiction over Edward Everly. In reaching that conclusion, the trial court relied upon *Rollins v. Ellwood* (1990), 141 Ill. 2d 244, 565 N.E.2d 1302, stating:

"The *Rollins* court, expressly recognizing the validity of the fiduciary shield doctrine in Illinois and citing with approval prior Illinois Appellate cases applying the fiduciary shield doctrine to restrict personal jurisdiction over non-resident defendants, found that Illinois law restricts personal jurisdiction over a representative of a corporation even if the representative enters into Illinois and, while in Illinois, engages in conduct giving rise to the cause of action. *Rollins*, [141 Ill. 2d at 279-80,] 152 Ill. Dec. [384,] 400, 565 N.E.2d at 1318.

In light of the recent *Rollins* decision, this court finds that it would not have personal jurisdiction over defendants Barbara Everly or Edward Everly even if plaintiff had alleged specific facts regarding conduct of these defendants occurring in Illinois and giving rise to the cause of action. The court finds that, as a matter of law, the fiduciary shield doctrine, which has been expressly recognized to be valid by the Supreme Court of Illinois, prevents the courts of this State from acquiring jurisdiction over these non-resident defendants under the circumstances alleged in plaintiff's amended complaint."

Our interpretation of *Rollins* does not lead us to the same conclusion as that reached by the trial court. In *Rollins*, the plaintiff, Sylvester Rollins, was arrested for speeding in East St. Louis and was mistakenly detained by local police on a Baltimore, Maryland, warrant for Ruchell Rollins. Inexplicably, the plaintiff signed an extradition waiver identifying himself as both Sylvester Rollins and Ruchell Rollins. Maryland authorities then sent Sergeant John Ellwood to deliver Rollins to Maryland to face the charges stated in the outstanding warrant. At some point during the trip to Baltimore, Rollins told Ellwood he was not the man they wanted and that he had never been to Baltimore. The day after their arrival in Baltimore, Rollins was released after a judge determined that he was not, in fact, the person they were seeking.

As a result of these events, the plaintiff filed suit against several defendants, including Sergeant Ellwood, alleging that he acted negligently and wilfully and wantonly so as to deny the plaintiff certain rights, and that he committed the intentional torts of kidnapping, unlawful restraint, and conspiracy. The trial court denied Ellwood's motion to quash service of process on him for lack of personal jurisdiction, the appellate court denied his petition for

leave to appeal that order, and our supreme court granted Ellwood's petition for leave to appeal. In that opinion, the court adopted the fiduciary shield doctrine, which provides that "the conduct of a person in a representative capacity cannot be relied upon to exercise individual personal jurisdiction over that person." (*Rollins*, 141 Ill. 2d at 276, 565 N.E.2d at 1316, citing *Hurletron Whittier, Inc. v. Barda* (1980), 82 Ill. App. 3d 443, 402 N.E.2d 840.) In applying the doctrine to Sergeant Ellwood's actions, the court held:

> "Ellwood entered into Illinois, and while in Illinois engaged in conduct giving rise to the present cause of action, solely in his capacity as a police officer acting for the Baltimore police department and the State of Maryland. The nature and quality of his actions in Illinois were defined and characterized by his status as a police officer employed by these entities. Because Ellwood's conduct in Illinois was a product of, and was motivated by, his employment situation and not his personal interests, we conclude that it would be unfair to use this conduct to assert personal jurisdiction over him as an individual. Also, we are not persuaded by the argument, raised by various sources, that asserting personal jurisdiction over an employee who acted in the scope of his employment is justified because the employee is serving his own financial interests when he performs the tasks imposed upon him by his employer. In practical terms, an employee, especially one in Ellwood's position, has little or no alternative besides unemployment when ordered to enter another State to carry out the wishes of his employer." *Rollins*, 141 Ill. 2d at 279-80, 565 N.E.2d at 1318.

■ Clearly, the facts in *Rollins* are distinguishable from those in the case at bar. The *Rollins* court found it very significant that Ellwood's actions were motivated by his employment status rather than personal interests and that he had little or no alternative besides unemployment. In the present case, Everly freely chose to accept a directorship in E&B, with full knowledge that E&B was an Illinois corporation conducting a mining operation in Illinois. We find there to be a meaningful difference between Everly's status as a corporate director of an Illinois corporation and Ellwood's status as a Maryland police officer sent to retrieve Rollins. Based on the analysis used by the *Rollins* court, we do not find the fiduciary shield doctrine applicable in this instance. Under Illinois law, the business and affairs of a corporation are to be managed by its directors. (Ill. Rev. Stat. 1989, ch. 32, par. 8.05 (now 805 ILCS 5/8.05 (West 1992)).) When Everly accepted his position as director of E&B, he knew or should have known such a position involves business transactions in Illinois. Furthermore, his position as director of an Illinois corporation afforded him the full protection of Illinois law in his business

interests related to E&B. To avail himself of the benefits of Illinois law and to then claim Illinois courts have no personal jurisdiction over him was not a result the *Rollins* court envisioned in adopting the fiduciary shield doctrine. Accordingly, we find that the trial court erred in granting Everly's motion to dismiss on jurisdictional grounds.

Under the Illinois long-arm statute, a person who transacts business within this State submits to the personal jurisdiction of the State as to any cause of action arising from those business transactions. (Ill. Rev. Stat. 1989, ch. 110, par. 2—209 (now 735 ILCS 5/2—209 (West 1992)).) As director of E&B for three years, Everly was responsible for E&B's business transactions and thus subjected himself to the jurisdiction of Illinois courts under the long-arm statute. We also find that the exercise of jurisdiction over Everly comports with Federal due process by not offending traditional notions of fair play and substantial justice. With that conclusion, we hereby reverse the trial court's order granting Everly's motion to dismiss for lack of personal jurisdiction.

## V

The final issue we must address is whether the fifth amendment of the United States Constitution protects Everly from complying with plaintiff's discovery requests to produce certain documents. Prior to the court's dismissal of Everly from this action, plaintiff served a notice to produce documents upon Everly, requesting both personal and corporate records. Everly refused to produce any documents. When plaintiff filed a motion to compel production, Everly asserted his fifth amendment right against self-incrimination, stating that sections 8.04(e) and (f) of the Act (Ill. Rev. Stat. 1985, ch. 96$^1$/$_2$, pars. 7908.04(e), (f) (now 225 ILCS 720/8.04(e), (f) (West 1992))) exposed him to criminal penalties. On January 3, 1990, the trial court denied plaintiff's motion to compel. In August 1990, plaintiff readdressed the issue, contending that the fifth amendment right was not applicable to corporate records. Additionally, both the Attorney General and the State's Attorney joined in an application for immunity, which stated, in pertinent part:

> "The People move that defendant Edward Everly be released from all liability for any criminal offense under the Surface Coal Mining Land Conservation and Reclamation Act (Ill. Rev. Stat., ch. 96$^1$/$_2$, par. 7901.01 *et seq.*) on account of any testimony or other evidence that he may be required to produce regarding E&B Coal Company, Inc. from September 10, 1981 to December 15, 1986."

On April 1, 1991, the trial court denied plaintiff's motion to

reconsider plaintiff's request for corporate records. On August 13, 1991, the trial court declared plaintiff's application for immunity moot because of its holding that Illinois courts lacked *in personam* jurisdiction over Everly.

With regard to this issue, plaintiff first argues that where the requested records implicate no criminal prosecution, Everly is not protected by the fifth amendment. Conversely, Everly argues that the fifth amendment does protect him under these circumstances. It is well settled that the fifth amendment privilege applies to both civil and criminal proceedings where the answers might incriminate a person in future criminal proceedings. (*Allen v. Illinois* (1986), 478 U.S. 364, 368, 92 L. Ed. 2d 296, 303-04, 106 S. Ct. 2988, 2991.) The fifth amendment privilege is not absolute, however, in that the party must tender some credible reason why a response to a question or to discovery will "pose a real danger of incrimination, not a remote or speculative possibility." (*Martin-Trigona v. Gouletas* (7th Cir. 1980), 634 F.2d 354, 360.) "An unreasonable fear or mere reluctance to answer should not be grounds for claiming the privilege, and if sole discretion for asserting the privilege rests with the witness, there is a substantial opportunity for abuse." (*In re Zisook* (1981), 88 Ill. 2d 321, 331, 430 N.E.2d 1037, 1041.) "In determining the validity of the witness' contention, the court shall take into consideration all of the facts and circumstances of the case." *Zisook*, 88 Ill. 2d at 334, 430 N.E.2d at 1043.

■ In the case at bar, the trial court did not consider all the facts and circumstances. The court did not consider whether the application for immunity was legally sufficient, because the issue became moot after the court ruled on the personal jurisdiction question. Additionally, the trial court did not address which, if any, of the requested documents would incriminate Everly. Finally, plaintiff has repeatedly shown that it has no interest in prosecuting Everly for any criminal offenses. Therefore, we remand this question to the trial court for a hearing to determine the validity of Everly's invoking the fifth amendment, and the trial court is to consider the content of the requested documents as well as the likelihood of criminal prosecution upon their disclosure.

■ The second part of this question is whether the corporate documents can be protected under the fifth amendment. Both the United States Supreme Court and our supreme court have held that they cannot. (*United States v. White* (1944), 322 U.S. 694, 88 L. Ed. 1542, 64 S. Ct. 1248; *People ex rel. Scott v. Pintozzi* (1971), 50 Ill. 2d 115, 277 N.E.2d 844.) Therefore, any of the documents relating to the business of E&B must be disclosed to plaintiff, regardless of whether the documents may tend to incriminate Everly personally.

For the foregoing reasons, the summary judgment of the circuit court of Williamson County in favor of Margaret Chamness is affirmed, the order of the circuit court of Williamson County dismissing Edward Everly from the action on jurisdictional grounds is reversed, the order of the circuit court of Williamson County denying plaintiff's motion to compel Everly to comply with discovery is vacated, and the cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part, vacated in part, and remanded.

RARICK and MAAG, JJ., concur.