**Boyd B. BANWELL, Plaintiff,**

v.

**ILLINOIS COLLEGE OF OPTOMETRY,**
**an Illinois not-for-profit corporation, and**
**John E. Brandt, individually, Defendants.**

**No. 97 C 4301.**

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 4, 1997.

Fred L. Foreman, Michael Todd Novak, Steven Michael Hartmann, Freeborn & Peters, Chicago, IL, for Boyd B. Banwell.

Warren von C. Baker, Daniel T. Brown, Gardner, Carton & Douglas, Chicago, IL, for Illinois College of Optometry.

Donald B. Hilliker, Derek J. Meyer, McDermott, Will & Emery, Chicago, IL, for John E. Brandt and Joseph Ebbesen.

### OPINION AND ORDER

NORGLE, District Judge.

Before the court is Defendant John E. Brandt's Motion to Dismiss Count Five of Plaintiff Boyd D. Banwell's Complaint for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the following reasons, the motion is denied.

### I. BACKGROUND

Plaintiff Boyd B. Banwell ("Banwell") was the president of the Illinois College of Optometry ("ICO") from 1 982 until April 1, 1996. In the summer of 1995, negative press reports surfaced about ICO and Banwell, and in particular, about the financial management of ICO. To determine the credibility of these reports, the ICO Board of Trustees ("the Board") hired outside legal and accounting experts to conduct an independent investigation. After the investigation allegedly revealed that Banwell had obtained unauthorized payments from ICO, the Board requested that Banwell repay those amounts. Shortly thereafter, on April 1, 1996, Banwell resigned under pressure from the Board.

While the Board sought a replacement, it installed a "Presidential Management Team" ("the Team"), which consisted of three Board members authorized to operate ICO and assume the duties of the president on an interim basis. One of the Team members was Defendant John E. Brandt ("Brandt"), who was also serving as Chairman of the Board at the time.

Following the negative press reports in 1995, the Team retained professional advisers to draft public statements, including a letter to certain "interested parties"[1] and a

---

1. The interested parties allegedly included the Illinois Optometric Association, the American Optometric Association, and the Michigan Optometric Association.

general press release, that would provide a limited explanation of the circumstances surrounding Banwell's departure. In May 1996, the Team unanimously approved a final version of the public statements and, with the support of the Board, issued them. As Chairman of the Board, Brandt's signature appeared on the letter to the interested parties, and several quotes regarding Banwell's resignation were attributed to Brandt in the general press release.

On June 16, 1997, Banwell filed a five-count diversity action against ICO and Brandt, individually.[2] In Count Five of his Complaint, Banwell alleges that ICO and Brandt, individually, defamed him by making false and malicious public statements about his resignation. Brandt, an Indiana resident, now moves to dismiss Count Five for lack of personal jurisdiction. He argues that his actions do not subject him to personal jurisdiction in Illinois because they were performed in his representative capacity, and thus, under the protection of the fiduciary shield doctrine.

In an affidavit accompanying his motion, Brandt affirms that he has "had no personal contacts in the State of Illinois at any relevant time. My only contacts have been those related to my service on both the Board and the Management Team, and those related to my employment as an agent for my current employer." (Brandt Aff. at ¶ 5).

## II. DISCUSSION

▇▇▇ A plaintiff bears the burden of proving facts sufficient to establish personal jurisdiction. *RAR, Inc. v. Turner Diesel Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997). When determining whether it has jurisdiction over a defendant, the court can both consider and weigh affidavits submitted by the parties, *Kontos v. U.S. Dept. of Labor,* 826 F.2d

573, 576 (7th Cir.1987), but must accept as true all undenied factual allegations and interpret all disputed facts in favor of the party asserting jurisdiction. *Saylor v. Dyniewski,* 836 F.2d 341, 342 (7th Cir.1988).

▇▇▇ In a diversity action, the court will have personal jurisdiction over a non-consenting, non-resident defendant only if an Illinois state court would have jurisdiction. *McIlwee v. ADM Industries Inc.,* 17 F.3d 222, 223 (7th Cir.1994). In determining whether a state court would have jurisdiction, a federal court must make a three-part inquiry: "(1) state statutory law, (2) state constitutional law, and (3) federal constitutional law." *RAR Inc.,* 107 F.3d at 1276.

The statute that allegedly provides jurisdiction in this case is Illinois' long-arm statute because: (1) Brandt allegedly transacted business in Illinois, 735 ILCS 5/2–209(a)(1); (2) Brandt's allegedly tortious act occurred in Illinois, 735 ILCS 5/2–209(a)(2); and (3) Brandt is a director[3] of an Illinois corporation, 735 ILCS 5/2–209(a)(12). As a practical matter, however, Subsection (c) of Illinois' long-arm statute subsumes the enumerated acts of subsection (a) by granting jurisdiction "on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2–209(c) (1997). Therefore, "the three inquiries mentioned above collapse into two constitutional inquiries—one state and one federal." *RAR, Inc.,* 107 F.3d at 1276.

▇▇▇ Federal due process demands that an Illinois court exercise jurisdiction only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326

---

**2.** The Complaint alleges: (1) retaliatory discharge; (2) breach of employment agreement; (3) breach of contract; (4) wrongful termination and (5) defamation. Banwell's counsel has informed the court that the Complaint mistakenly refers to Brandt individually in Counts Two and Four. As such, Banwell's counsel has stipulated that the only count remaining against Brandt individually is Count Five. Based on counsel's representation, the court gives Banwell leave to file an amended complaint to the extent that it no longer reflects the inadvertent references to

Brandt in Counts Two and Four. *See* Fed R. Civ. P. 15(a).

**3.** Though Brandt is technically a trustee, rather than a director, he does not contest that distinction (assuming there is one in this context) in his briefs. Thus, the court infers that Brandt accepts the interchangeable use of the terms. *See generally* 110 ILCS 35/1(1997) (using the terms trustee and director interchangeably in the context of an educational institution).

U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Neuman & Assocs. v. Florabelle Flowers,* 15 F.3d 721, 725 (7th Cir.1994). The defendant must purposefully avail itself of the rights and privileges of conducting activities in the forum state such that it invokes the benefits and protections of that forum's law. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). In other words, the defendant's activities must be of the quality and nature that it would reasonably anticipate being haled into that jurisdiction's court. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 287, 100 S.Ct. 559, 562, 62 L.Ed.2d 490 (1980). Due process also requires that the action arise from, or at least relate to, the defendant's contacts with the forum state, and that the defendant's relationship with the forum must not be "random, fortuitous, or attenuated." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 475–76, 105 S.Ct. 2174, 2182, 2183–84, 85 L.Ed.2d 528 (1985).

■ "[T]he doctrine of constitutional avoidance counsels that 'federal courts should avoid addressing federal constitutional issues when it is possible to dispose of a case on pendent state grounds,'" *RAR, Inc.,* 107 F.3d at 1276 (citation omitted) In any event, Brandt does not challenge the exercise of personal jurisdiction over him on federal constitutional grounds. Thus, the court will only address whether the exercise of personal jurisdiction over Brandt meets the due process guarantees of the Illinois Constitution.

■ Though "[t]he Illinois Supreme Court has made clear that the Illinois due process guarantee is not necessarily co-extensive with federal due process protections.... Illinois courts have given little guidance as to how state due process protection differs from federal protection in the context of personal jurisdiction." *Id.* Nevertheless, the Illinois Supreme Court has explained that "[J]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 398, 565 N.E.2d 1302, 1316 (1990).

■ "Based on the fairness required by Illinois due process principles, a defendant in Illinois may raise a defense to personal jurisdiction known as the fiduciary shield doctrine." *Glass v. Kemper Corp.,* 930 F.Supp. 332, 340 (N.D.Ill.1996). In general, the fiduciary shield doctrine "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." *Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 912 (7th Cir. 1994) (citation omitted). However, at least one court has stated that "no single factor is determinative. Rather, the test is whether, on the basis of the defendant's conduct in Illinois or acts affecting Illinois interests, it would be fair to require him to defend an action in Illinois." *Brujis v. Shaw,* 876 F.Supp. 975, 980 (N.D.Ill.1995). In any event, "the doctrine is usually said to be discretionary or 'equitable,' rather than absolute, an entitlement." *Rice,* 38 F.3d at 912 (citation omitted).

The Illinois Supreme Court first recognized the fiduciary shield doctrine in *Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 396, 565 N.E.2d 1302, 1314 (1990). In *Rollins,* Ellwood, a Baltimore police officer, traveled to Illinois to assume custody over an alleged fugitive captured in Illinois and wanted in Maryland. Unfortunately, the alleged fugitive ("Rollins") was the victim of mistaken identity. However, the mistaken identity was not discovered until after Rollins had spent several weeks in jail and Ellwood had taken custody of him for the trip back to Baltimore. After his release, Rollins sued Ellwood and the City of Baltimore in Illinois. In finding that the fiduciary shield doctrine protected Ellwood from the jurisdiction of Illinois courts, the Illinois Supreme Court stated:

> We find that it is not fair, just, and reasonable for the Illinois courts to assert personal jurisdiction over one in Ellwood's situation. Ellwood entered into Illinois, and while in Illinois engaged in conduct giving rise to the present cause of action, solely in his capacity as a police officer acting for the Baltimore police department and the State of Maryland. The nature and quality of his actions in Illinois were

characterized by his status as a police officer employed by these entities Because Ellwood's conduct in Illinois was a product of, and was motivated by, his employment situation and not his personal interests, we conclude that it would be unfair to use this conduct to assert personal jurisdiction over him as an individual.

*Rollins,* 152 Ill.Dec. at 400, 565 N.E.2d at 1318.

The leading Seventh Circuit case discussing the fiduciary shield doctrine and *Rollins* is *Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 912–13 (7th Cir.1994). Because of the apparent confusion each party in the instant case had in explaining whether the district court exercised personal jurisdiction in *Rice,* the court will first review that opinion In *Rice,* an Illinois field agent ("Rice") of a Massachusetts medical instrument corporation ("Nova") filed a workers' compensation claim after suffering a work-related injury *Rice v. Nova Biomedical Corp.,* 763 F.Supp. 961, 962 (N.D.Ill.1991). Apparently not convinced of Rice's injury, Nova sent its director of technical services ("Christopher") to Illinois to warn Rice of his alleged unsatisfactory job performance. *Id.* After Rice suffered another work-related injury about a year later, Christopher sent Rice a memorandum stating that Nova had terminated him. *Id.*

■ Rice then sued Nova and Christopher in diversity for retaliatory discharge, defamation, and intentional interference with advantageous business relations. Christopher, a resident of Massachusetts, asserted that he was not subject to jurisdiction in Illinois because of the fiduciary shield doctrine. *Id.* at 964. The district court explained that "to avoid application of the doctrine, [a plaintiff] need only allege in good faith that the performed acts advanced personal rather than employer interests." *Id.* at 964 (citation omitted). Accordingly, the district court dismissed the retaliatory discharge and defamation counts because Rice failed to allege that Christopher committed the alleged torts for his personal benefit. *Id.* at 964, 965. However, because Rice specifically alleged that Christopher intentionally interfered with his employment for personal gain, the court found that the fiduciary shield did not apply to that count and thus exercised its jurisdiction. *Id.* at 965. Having found personal jurisdiction over Christopher on that count, the court then returned to the retaliatory discharge and defamation counts and refused to dismiss them based on the doctrine of pendent personal jurisdiction. *Id.* at 966.[4] When the case went to trial, the jury returned a verdict in favor of Rice on the defamation and tortious interference counts, but refused to find Nova and Christopher liable for retaliatory discharge. *Rice,* 38 F.3d at 911.

On appeal, the Seventh Circuit affirmed the judgment. *Id.* at 918. Though the court's opinion primarily discusses defense counsel's failure to adequately challenge personal jurisdiction before the trial, the court agreed with the district court that "[i]f Christopher's action in coming into Illinois to fire and defame Rice was done solely on behalf of Nova, he is under the fiduciary shield doctrine, regardless of whether he exercised discretion rather than merely carrying out precise orders mechanically." *Id.* Citing *Rollins,* the court stated that the "[t]he shield is withdrawn if the agent was acting also or instead on his behalf—to serve his personal interest." *Id.* (citation omitted).

Brandt argues that *Rollins* and *Rice* control the outcome of this case. Specifically, Brandt argues that like the defendants in those cases he did not act for personal gain, but rather on behalf of ICO, in issuing the public statements about Banwell's resignation, (Def's Br. at 8). Banwell does not dispute that he has failed to allege that Brandt sought to personally gain by allegedly defaming him. Moreover, there is no evidence that Brandt sought to personally gain by issuing the public statements. Therefore, Brandt argues, he is protected by the fiduciary shield doctrine.

However, Banwell argues that *Rollins* and *Rice* are distinguishable to the case at bar because "unlike the defendants in [those

---

4. "Under the doctrine of pendent personal jurisdiction, a court may exercise its discretion to hear claims as to which personal jurisdiction may otherwise be lacking if those claims arise out of a common nucleus of facts with claims as to which personal jurisdiction exists." *Rice,* 763 F.Supp. at 966.

cases], Brandt was not a mere employee but rather a corporate director exercising discretion." (Pl. Resp. at 5). Thus, Banwell urges that the "personal interest vs. employer interest" inquiry is not applicable here. Instead, Banwell asserts that the proper inquiry when a case involves a corporate director is "whether the board member freely chose his position and the fairness of subjecting that director to a court's jurisdiction." (Pl. Resp. at 3). Under this inquiry, Banwell asserts, Brandt is subject to personal jurisdiction in Illinois.

In support of his argument, Banwell cites a case from the Illinois Appellate Court, *People ex rel. Morse v. E & B Coal,* 261 Ill.App.3d 738, 199 Ill.Dec. 597, 634 N.E.2d 436 (1994). In *E & B Coal,* a state agency filed suit against a closely-held mining company, its president, and its directors, for violations of state conservation laws. *Id.* 199 Ill.Dec. at 598, 634 N.E.2d at 437. Relying on *Rollins,* the trial court held that the fiduciary shield doctrine applied to one of the directors ("Everly"), a resident of California, and dismissed him for lack of personal jurisdiction. *Id.* at 601, 634 N.E.2d at 440. The Illinois Appellate Court reversed. *Id.* at 603, 634 N.E.2d at 442. In distinguishing the case from *Rollins,* the appellate court noted that in *Rollins* "Ellwood's actions were motivated by his employment status rather than personal interests and that he had little or no alternative besides unemployment" *Id.* By contrast, the appellate court reasoned, "Everly freely chose to accept a directorship ... with full knowledge that E & B Coal was an Illinois corporation conducting a mining operation in Illinois." *Id.* Furthermore, the appellate court stated that Everly's "position as director of an Illinois corporation afforded him the full protection of Illinois law...." *Id.* at 604, 634 N.E. 2d at 443. Therefore, the appellate court held that Everly was subject to Illinois' long-arm statute and the fiduciary shield did not apply. *Id.*

In response, Brandt argues that to find *E & B Coal* controlling would mean "that a director of a corporation can never have the protection of the fiduciary shield." (Def's Reply at 8).[5] While the Illinois Supreme

Court has yet to address that exact issue, the court's own research reveals that at least one Illinois appellate court has held that directors and officers of Illinois corporations who have had contacts with Illinois are not entitled to the protection of the fiduciary shield doctrine. *IBM v. Martin P & C Insur. Agency, Inc.,* 281 Ill.App.3d 854, 217 Ill.Dec. 197, 198, 202, 666 N.E.2d 866, 867, 871 (1996).

In *IBM,* IBM sued Arnold Skoller ("Skoller"), the president and a director of a dissolved Illinois corporation, for wrongful dissolution. *Id.* 217 Ill.Dec. at 199, 666 N.E.2d at 868. Skoller, a non-resident, moved to dismiss the complaint based on the fiduciary shield doctrine, claiming that his "only contact with Illinois was a result of [his] affiliation with the [corporation]" and thus. he was "beyond the fair reach of Illinois courts." *Id.* After the trial court granted the motion, the Illinois Appellate Court reversed. *Id.* at 198, 666 N.E.2d at 867. The court noted that Skoller's position as a director red officer presented a significant ground to distinguish the case from *Rollins,* which involved a mere employee. *Id.* at 202, 666 N.E.2d at 871. Citing *E & B Coal* as "directly or point," the court reasoned:

> As a director and officer of an Illinois corporation. Skoller tacitly accepted both the duties and the benefits conferred upon him by Illinois law. His position with [the corporation] and the existence of the Illinois long-arm statute gave fair warning to Skoller that he may one day be hailed into court here for his conduct as an officer or director. Indeed, any other conclusion would render meaningless the provisions of section 2–209(a)(12) of the long arm statute which provide explicitly for the exercise of jurisdiction over non-resident directors and officers such as Skoller.

*Id.* Accordingly, the court held that "it would be both fair and reasonable" for an Illinois court to exercise jurisdiction over Skoller. *Id.*

Based on the authority of *E & B Coal* and *IBM,* the court finds that the fiduciary shield doctrine is inapplicable to the

---

5. In addition, Brandt argues that unlike the director in *E & B Coal,* he serves a non-profit corporation. However, Brandt does not provide any authority for this argument; nor does he explain how that distinction is material to the jurisdictional question before the court.

case at bar. Like the directors in those cases, Brandt voluntarily accepted a position on a board in an Illinois corporation, knew that ICO conducts the majority, if not all, of its business in Illinois, and based on his position as a trustee (Chairman of the Board), was afforded the full protection of Illinois law in his business interests related to the corporation. Moreover, Brandt acknowledges that he participated in the in management and operation of ICO, most notably when the Board was seeking a replacement for Banwell (Brandt Aff. at ¶ 13); it was during that time that Brandt allegedly committed the tort of defamation in Illinois. In other words, unlike the police officer in *Rollins,* Brandt was not a mere employee compelled to visit the state on a brief, one-time journey. Rather, Brandt's contacts with Illinois were voluntarily-assumed, significant, and continuous. *Cf. Brujis v. Shaw,* 876 F.Supp. 975, 980 (N.D.Ill.1995) (fiduciary shield did not apply where senior corporate officers of out-of-state corporation were in a position to decide whether to make contacts in Illinois). Thus, there is no unjust surprise for Brandt, though a non-resident, to be sued in an Illinois court.

### III. CONCLUSION

"The fiduciary shield doctrine is discretionary in nature and should be applied only where equity demands it." *Brujis,* 876 F.Supp. at 980 (citation omitted). Based on Brandt's position with ICO and his contacts with Illinois, the court concludes that it would not be unfair, unjust, or unreasonable for Brandt to defend Banwell's defamation allegations in this court. Accordingly, the court finds that equity does not demand that the fiduciary shield doctrine apply to protect Brandt from this court's jurisdiction. *See id.* at 979 (in determining whether the fiduciary shield doctrine applies, "fairness is the key; courts look at the quality and nature of defendant's acts in Illinois...."). Brandt's Motion to Dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) is denied.

IT IS SO ORDERED.